## WILLIAM ROBERTSON, Trustee, *v.* B. F. GLASSCOCK.

Where a surety had signed a promissory note payable to a bank, the amount of which was left in blank, given in renewal of another note on which he was surety, and the bank clerk filled up the note with a larger sum than was intended, the surety is not liable to the bank for the excess over the amount intended to have been inserted.

APPEAL from the District Court of Concordia, *Farrar*, J. *Stacey* and *Sparrow*, for plaintiff. *A. N. Ogden*, for defendant. The judgment of the court was pronounced by ∿

SLIDELL, J. The defendant is sued upon a note of the following tenor : "$5573 63. Natchez, Sep. 10, 1839. Twelve months after the seventeenth day of January, 1839, we or either of us promise to pay, without defalcation, to the Commercial Bank of Natchez or order, at their banking house in Natchez, five thousand five hundred and seventy-three dollars sixty-three cents, for value received. Credit first drawer. M. HOOTSELL. JOHN MAYES. B. F. GLASSCOCK."

The defendant admitted his signature, but averred, that when he signed the note, its amount was in blank ; and that it was intended by him to be used in the renewal of a note of $1820 33, of which *Hootsell*, *Mayes* and himself were drawers—*Mayes* and himself being sureties, and *Hootsell* the principal debtor. That without his consent, and contrary to his understanding, it was wrongfully filled up by the bank with a larger amount. He acknowledged his willingness to be held liable for the amount of $1820 33.

There was a verdict in favor of the plaintiff for the last named amount and interest, thus sustaining the defence as to the residue of the note. The plaintiff has appealed.

It will be observed, that the note in question is in the hands of the original holder, *Robertson*, representing the bank. The case is, therefore, relieved from

the difficulty which would present itself to the defendant, were he seeking to set up an equity against a *bonâ fide* endorsee. With this remark, we proceed to state what we consider the facts of the case, as deducible from the testimony in the cause.

*Hootsell* was the debtor of the bank in various amounts, with various sureties. The bank had suspended specie payments, and it would seem was mainly, if not exclusively, engaged in endeavoring to collect its debts. It had employed one *Peale*, a former clerk of the bank, to call on its country debtors and make arrangements in renewal or settlement of their liabilities past due. Under these circumstances, *Peale* called on *Hootsell*, and exhibited to him several printed blanks for notes to be given by him in renewal. Among other liabilities of *Hootsell*, the bank held at that time a note of *Hootsell*, with *F. S. Mayes* and *John L. Wall* as sureties, payable in January, 1839, for $6676 80, on which there was a credit of $3304 22; another, with *John Hootsell* and *John Mayes* as sureties, payable 3d February, 1839, for $2348 86; and another, with *John Mayes* and *B. F. Glasscock* as sureties, payable in March, 1839, for $1820 33. One of these blank notes was sent by *Hootsell* to *Glasscock*, with a statement that he wanted his name, for the purpose of renewing a note in bank on which he, *Glasscock*, was surety. *Glasscock* signed and returned it; it was then given by *Hootsell* to *Peale*, and was subsequently filled up at the bank by the discount clerk, with the amount of the balance due on the two notes above mentioned of $6676 80 and $1820 33. So far as the testimony informs us, this was done without any further communication with *Hootsell* or *Glasscock*. The two notes remained with the bank, and the usual memoranda·of cancellation were made with regard to them. *Hootsell* states that upon signing the other renewal notes they were handed to *Peale*, in order that he, *Peale*, might get the names of the respective sureties; and this assertion is strongly corroborated by a deed of trust offered by the plaintiff, by which it appears, that at a subsequent time, the bank held two other notes of *Hootsell*, with other sureties, bearing the same date as the note sued upon. *Hootsell* swears that it was the understanding with *Peale* that the blank signed by *Glasscock* was to renew the particular debt upon which he was bound, and *Peale's* testimony does not contradict this statement.

We think it fairly results from this evidence, that neither *Glasscock*, *Hootsell* nor *Peale*, the agent of the bank, intended at the time that the blank note should be used for any other purpose than to renew that upon which *Glasscock* was liable; and the note having been delivered under such circumstances to the bank's own agent, it is obvious, that it could not afterwards enlarge *Glasscock's* liability by filling up the blank for a larger amount without his assent.

It is also clear that *Hootsell's* subsequent ratification of the act of the bank in so filling up the note, could not affect the surety; nor has anything been done by *Glasscock* himself which can be construed into a subsequent assent to this attempted enlargement of his liability.

Judgment affirmed, with costs.