### UNION TRUST CO. OF NEW JERSEY v. McCRUM.

(Supreme Court, Appellate Division, First Department. June 16, 1911.)

1. BILLS AND NOTES (§ 245*)—LIABILITY OF INDORSER—COLLATERAL SECURITY.
    Where the president of a corporation, indebted on a note, presented to the payee a blank note of even date, bearing a third person's indorsement, as collateral security, and payable on a day certain, the third person became a surety.

    [Ed. Note.—For other cases, see Bills and Notes, Cent. Dig. §§ 558, 559; Dec. Dig. § 245.*]

2. PRINCIPAL AND SURETY (§ 105*)—DISCHARGE OF SURETY—EXTENSION OF TIME OF PAYMENT.
    Where the payee of a note, without the knowledge of a surety, took a new note from the maker, and thereby extended time for the payment of the old note, the surety was discharged, under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 201, declaring that a person secondarily liable on an instrument is discharged by any agreement binding on the holder to extend the time of payment.

    [Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 191; Dec. Dig. § 105.*]

3. PRINCIPAL AND SURETY (§ 29*)—DELIVERY OF BLANK NOTES—RIGHT TO FILL BLANKS.
    Under Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 33, providing that a note, to bind one becoming a surety thereto prior to its completion, must be filled up in accordance with the authority given and within a reasonable time, a payee of a note executed by a corporation, who receives from its president, at the time of the execution of the note, as collateral security, a blank note bearing the indorsement of a third person, must, to hold the third person, fill up the blanks in strict accordance with the authority given by the third person and in a reasonable time; and where the third person, when delivering the note in-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

dorsed in blank to the president, was assured that it would only be used as security of a designated debt, the payee could not fill in the blanks and sue on it for another debt.

[Ed. Note.—For other cases, see Principal and Surety, Cent. Dig. § 15; Dec. Dig. § 29.*]

Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by the Union Trust Company of New Jersey against Lloyd G. McCrum. From a judgment for plaintiff, entered on a directed verdict, defendant appeals. Reversed, and new trial granted.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

William P. Maloney, for appellant.
Burt D. Whedon, for respondent.

SCOTT, J. The defendant appeals from a judgment entered upon the direction of a verdict. The action is brought against defendant as indorser of a promissory note made by the Graeco-American Currant & Supply Company (hereafter called the Currant Company). It appears that in June, 1907, one Griffith Coit, the president of the Currant Company, arranged with the Second National Bank of Jersey City to extend credit to the Currant Company on the security of promissory notes indorsed by said Coit and the defendant; the latter consenting to indorse to a limited amount. Soon afterwards the Currant Company borrowed from the bank $7,500, giving as security therefor two of its own notes, for $5,000 and $2,500, respectively, each indorsed by Coit and defendant. The note for $2,500 was ultimately paid. The note for $5,000 was renewed from time to time by notes bearing the same indorsement as the one originally given. In the meantime the Second National Bank of Jersey City went into liquidation, and plaintiff took over its assets, so that the subsequent dealings were with plaintiff.

In June, 1907, the last of the notes indorsed by Coit and defendant fell due. Plaintiff had been rather pressing for its payment, but the Currant Company was unable or unwilling to make payment. Coit finally persuaded plaintiff to extend the loan, and with plaintiff's acquiescence took up the outstanding due note, indorsed by both Coit and defendant, and gave to plaintiff in place thereof the note of the Currant Company for $5,000, payable on a day specified therein, and also another note, signed by the Currant Company and indorsed by defendant, but otherwise wholly blank; that is, as to date, amount, and time of payment. This blank note, as the plaintiff's president testified, was taken as collateral to the company's note indorsed by Coit. This latter note was renewed several times, and the loan to the Currant Company was thereby extended from time to time. These arrangements for the extension of the loan and the renewal of the company's notes were made by Coit without defendant's knowledge. The

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

note was not filled up until long afterwards; the plaintiff assuming to hold the blank note as collateral security for each successive extension of the loan. Ultimately the Currant Company failed, and then, about a year after it had been received, plaintiff filled in the blank note and demanded payment from defendant.

[1] There is no evidence or suggestion that defendant knew of the use that had been made of the note, or that he consented to any of the renewals of the loan for which it was given as collateral. When Coit presented plaintiff with a blank note bearing defendant's indorsement, as collateral security for the note of the Currant Company given at the same time and payable on a day certain, the utmost that could have been implied was that defendant thereby became surety for the payment of the principal note of the Currant Company according to its tenor, precisely as if the defendant had been an indorser of the principal note.

[2] When plaintiff, without defendant's knowledge or consent took a new note from the Currant Company, it extended the time for the payment of the loan, and thereby discharged defendant; for an indorser is discharged "by any agreement binding upon the holder to extend the time of payment or to postpone the holder's right to enforce the instrument." Negotiable Instruments Law (Consol. Laws 1909, c. 38) § 201. "The principle is well settled that when the holder of a promissory note takes a new note from the debtor, payable at a future day, he suspends the right of action upon the original demand until the maturity of the last-mentioned note, and the surety upon the same, not assenting thereto, thereby becomes discharged of liability." Hubbard v. Gurney, 64 N. Y. 457–466.

[3] The law respecting the duty of a person who receives and intends to reply upon a note that is partly blank is now well settled in this state. "In order that any such instrument, when completed may be enforced against any person who became a party thereto prior to its completion it must be filled up strictly in accordance with the authority given and within a reasonable time. * * *" Section 33, Negotiable Instruments Law. It is unquestioned that defendant became a party to the note prior to its completion, and he is absolved from liability, unless it was filled up, not only in strict accordance with the authority given by him, but also in a reasonable time. Clearly the latter requirement was not observed. When plaintiff accepted the uncompleted note bearing defendant's indorsement, it did so subject to any equities between the Currant Company and defendant; for, unless the note was filled up strictly in accordance with defendant's authority, he would not be bound.

No attempt was made by plaintiff to show what authority defendant had given as to the filling in of the note, and perhaps it was impossible to do so, since Coit's evidence apparently could not be obtained. The defendant, however, testified that, while he gave Coit notes indorsed in blank for use in another bank, he never gave him such a note for use with plaintiff, except to se-

cure a balance said to be still due on the $2,500 note, and that when he did this Coit assured him that the $5,000 loan had been paid off. If this was true, and the jury might well have believed it, the note sued upon had not been filled up "strictly in accordance with the authority given," and the verdict should have been for the defendant. From every point of view, therefore, the direction of a verdict in favor of the plaintiff was erroneous.

Judgment reversed, and a new trial granted, with costs to appellant to abide the event.

INGRAHAM, P. J., and LAUGHLIN and MILLER, JJ., concur. CLARKE, J., dissents.