BANK OF UNITED STATES, Plaintiff, *v.* ISRAEL ANDRON, Defendant.

Municipal Court of New York, Borough of Manhattan, Third District, June 18, 1934.

*Carl J. Austrian* [*Warren C. Fielding* and *Sol Dubow* of counsel], for the plaintiff.

*David S. Andron,* for the defendant.

McMahon, J.   On June 3, 1925, defendant signed a written instrument wherein he guaranteed to the Municipal Bank of Brooklyn, its successors and assigns, " the payment at maturity of the bills, notes, checks, drafts and all other debts or liabilities, either or all, endorsed or contracted by Congregation Beth El of Boro Park, Brooklyn, hereinafter called the customer, or the successors, already held or which may hereafter be held by said bank, and which may now be due or hereafter become due to the said bank by the said customer or its successors."

The liability of defendant under this instrument, which was described as a continuing guaranty, was expressly limited to $1,000, plus interest, costs and attorneys' fees.   Similar guaranties were executed by other members of this congregation, and loans were subsequently made by the bank to the congregation on the strength and credit thereof.

The said instrument contained the following provision pertinent to the issues presented in this action: " That this guaranty shall be and shall be construed as being and intended to be a continuing guaranty of the payment of any and all such bills, notes, checks, drafts and other debts or liabilities (and all extensions and renewals thereof) either made, endorsed or contracted by the said Customer or its successors until revoked by him in writing and a copy of such revocation duly delivered to said Municipal Bank."

It is also further provided: " The Municipal Bank may also at any time, in its discretion, and when the Municipal Bank may deem it necessary, compromise, settle or extend time of payment of any of the demands or obligations represented by any of the securities."

On May 11, 1929, the Municipal Bank of Brooklyn was duly merged with the Bank of United States, plaintiff in this action, pursuant to the provisions of the Banking Law of the State of New York.   By the provisions of section 494 of the Banking Law, all of the rights, remedies and benefits under the contract of guaranty passed to, and vested in, the Bank of United States as successor to Municipal Bank of Brooklyn pursuant to this merger.   (*Bank of United States* v. *Glickman,* 241 App. Div. 92.)

On July 18, 1930, the Congregation Beth El of Boro Park executed its promissory note for $30,000 to the order of " ourselves," which was indorsed and delivered to plaintiff.   This note matured November 18, 1930, and was not paid at maturity.   This action

was thereafter brought by plaintiff to recover from defendant the sum of $1,000 under the said instrument of guaranty of June 3, 1925.

The answer of defendant was a general denial, which was amended at the trial pursuant to notice served to set up as affirmative defenses: (1) That there was no delivery, acceptance or consummation of the alleged contract of guaranty; (2) revocation.

Upon the trial evidence was introduced by plaintiff showing that the $30,000 note of July 18, 1930, was a renewal note evidencing outstanding indebtedness of that amount from Congregation Beth El of Boro Park to Municipal Bank of Brooklyn dating back to 1925. This indebtedness had been increased and diminished in the interim, and there is now due and owing to the Bank of United States on account of said indebtedness the sum of $23,333.81. A motion by plaintiff to conform the pleadings to the proof was granted on the trial.

Defendant offered evidence to prove that, prior to the execution and delivery of the renewal note of July 18, 1930, he had personally served upon the Municipal Bank of Brooklyn on Saturday, March 9, 1929, a letter dated March 8, 1929, copy of which was received in evidence, disclaiming liability under this guaranty, and also stating: " I hereby nullify and revoke the same." Plaintiff denies that such letter was ever delivered or received by Municipal Bank of Brooklyn, and offered evidence in support of such denial. Without further discussion of the testimony on this issue, and in order to have the record clear on this point, I find that defendant has established that such letter was delivered to Municipal Bank of Brooklyn on the said date, March 9, 1929.

I also find that this instrument of guaranty dated June 3, 1925, was properly delivered and accepted by Municipal Bank of Brooklyn, and that in executing the same defendant obligated himself in the amount specified, subject to his right to revoke his obligation by notice in writing as provided therein. Defendant's first alleged defense, therefore, is dismissed. The remaining question is the legal one, to wit: Assuming that defendant's notice of revocation was duly delivered to Municipal Bank of Brooklyn on March 9, 1929, what effect, if any, does that have on defendant's liability to the plaintiff on the facts shown herein?

In a previous action brought by this plaintiff against William Weintraub, one of the other guarantors on a guaranty similar to that involved herein, and tried by Mr. Justice ROEDER, in the Third District Court in March, 1933, judgment for the defendant dismissing the complaint was rendered, which judgment was thereafter affirmed without opinion by the Appellate Term. This decision, however, is

not decisive of the question presented by the record before this court because of additional evidence offered in the instant case. From the opinion of the trial court in the previous case, it appears that the defendant therein had served notice of revocation on the Municipal Bank of Brooklyn on March 15, 1929. Apparently there was no evidence offered by plaintiff on the trial of that case to show that the $30,000 note was a renewal note, and the trial judge properly assumed that it represented a present loan, and said in his opinion: " The loan of $30,000 was not in existence at the time of the delivery of the written revocation of the guarantee by the defendant." Obviously, the guarantor having revoked his guaranty, he would not be obligated for any loans subsequently made. The instant case presents a different question, since the evidence shows that the note of July 18, 1930, was a renewal of an obligation which existed prior to the notice of revocation.

It is contended by plaintiff that, since this instrument is a continuing guaranty of indebtedness, expressly providing for " extensions and renewals thereof," defendant's liability continues indefinitely, no matter how many extensions are given, and in spite of any revocation, as long as the indebtedness remains unpaid. The cases cited in plaintiff's brief, including *Bank of United States* v. *Chemical Bank & Trust Co.* (140 Misc. 394) and *Merchants' National Bank of Whitehall* v. *Hall* (83 N. Y. 338, 344), clearly establish the liability of a guarantor under a continuing guaranty for advances, renewals and extensions during the period of the guaranty. These cases, however, do not touch upon the question of revocation by the guarantor, except to indicate that such a guarantor, at any time, " might, by giving notice, have restricted it to the demands actually held by the bank at the time of notice." (*Merchants' National Bank of Whitehall* v. *Hall, supra.*) Even without the express provision permitting revocation, which is contained in the guaranty in the instant case, the guarantor would have the right to revoke his guaranty and relieve himself from the obligation at least for subsequent loans. Does his revocation have any other effect?

The authorities are unanimous in applying to a contract of guaranty the rule of *strictissimi juris*. As has been said, a surety is " a favorite of the law," and his contract must be interpreted accordingly. In the event that he discharges the obligation to the creditor, he is entitled by subrogation to enforce the creditor's claim against the debtor. This is a substantial right which inheres in a surety's obligation. If the creditor does anything, without the consent of the surety, which might impair or prejudice this right, the surety is discharged from his obligation. The extension of time

of payment of the principal obligation has that effect. (*National Park Bank* v. *Koehler*, 204 N. Y. 174; *Union Trust Co.* v. *McCrum*, 145 App. Div. 409; *Cohen* v. *Rossmoore*, 225 id. 300.)

Applying these principles to the case at bar, when the guarantor served notice of revocation in March, 1929, it not only relieved him from the obligation for loans thereafter made, as was held in the previous Municipal Court action, but it terminated and canceled his consent to further extension or renewal of the existing loan. Granting that this contract was a continuing guaranty, it could be revoked at any time by the guarantor. By his consent he guaranteed payment of loans to the amount specified and also consented to " extensions and renewals thereof," until revoked by him in writing. Any renewal or extension of payment of the existing loan made after that revocation was without the consent of the guarantor. When he revoked the guaranty, his obligation to the creditor was fixed as of that date. The bank at the maturity of the existing loan, if it were not paid, might then have proceeded against the defendant and collected the amount of the guaranty, in which event the defendant would have had subrogation against the principal debtor. The bank could not continue to grant extensions to the debtor, in the face of this revocation, and expect to hold the defendant as guarantor at any time in the future. The renewal or extension of payment of the loan guaranteed in this case was made after the guaranty had been revoked and was without the consent of defendant guarantor. He was, therefore, discharged from his obligation.

Judgment for defendant dismissing the complaint.