TATE, Judge.
This is a suit by the payee of a note in the amount of $1,680 dated July 8, 1957 against the co-makers, Grady E. Black,[1] *549 Mrs. Grady E. Black (his former wife), and V. M. Fueston. The latter two parties appeal from judgment holding them liable in the amount of $1,393 (the unpaid principal), together with 8% interest and 15'% attorney’s fees as provided by said note.
By their appeal, the appellants contend that they should not be held liable upon the note, since when signed by them in blank they had authorized its completion for a much smaller sum. See LSA-R.S. 7:14, quoted in full at footnote 3 below.
In accordance with the specific allegations to this effect in their answers, the appellants both testified that they had signed the note in blank at the solicitation of Grady Black and of Robert McCarthy, who was at the time the plaintiff’s Lafayette manager, for the specific purpose only of refinancing the car note owed by Black to another finance company (and in order to help Black avoid losing it); and that the amount which they intended to refinance, and which amount only Black and McCarthy were authorized to fill in the blank note, was the balance due on the car note, which they had been informed was “$680.00 or somewhere around there, that’s what I was told I was signing” (see Fueston, Tr. 76) or “six hundred and some dollars, I don’t know the exact amount” (Mrs. Black, Tr. 82).
The amount of the new note when completed was, in fact, for the sum of $1,680. The records of the plaintiff finance company indicate that this balance was derived by including the following items:
Balance due to pay out a note of Grady E. Black in favor of Plaintiff $ 450.00 [2]
Life Insurance 20.00
Recording fee 3.00
Automobile Insurance 80.00
Balance paid by plaintiff to Commercial Credit to pay out chattel mortgage note on the Black car 657.98
Discount 470.00
Total $1,680.00
The plaintiff finance company did not see fit to subpoena or otherwise secure the testimony of McCarthy for the purpose of denying the facts specifically pleaded by the defendants and proved by their uncontra-dicted testimony, both to the effect that they had signed the instrument in blank and also that they had only authorized its completion in the amount of some six hundred-odd dollars to refinance the Commercial Credit note on Mr. Black’s car. The only testimony introduced by the plaintiff company was the testimony of its present manager who, from the records, testified upon what basis the total amount of $1,680 was reached. This witness likewise testified that McCarthy was now working for another finance company in New Orleans at a known location and that this former manager had left the plaintiff’s employ on good terms and *550 only because he had received a better job offer.
Our learned trial brother held that the testimony of the appellants did not by itself prove a fraudulent insertion of a greater amount than authorized by such clear and convincing proof as to meet the burden placed upon those who allege and seek to prove fraud. Sanders v. Sanders, 222 La. 233, 62 So.2d 284; American Guaranty Co. v. Sunset Realty and Planting Co., 208 La. 772, 23 So.2d 409. (It is to be noted that following the trial the judge who heard the witnesses died, and that the judgment was rendered on the record as made up by his successor, who thus did not have an opportunity to evaluate the credibility of the witnesses based upon his personal observation of them.)
Counsel for appellants urge that the trial court erred in not accepting, and in imputing perjury to, the uncontradicted testimony of the appellants that the promissory note which they signed in blank had been completed for a sum far greater than that authorized by themselves; and in not holding that the failure of the plaintiff-appellee to call McCarthy, its former manager who had knowledge on its behalf of the transaction, created a presumption that the testimony of such witness would have been unfavorable to the plaintiff. See: Coleman v. Manufacturers Cas. Ins. Co., 229 La. 105, 85 So.2d 47; Cockrell v. Penrod Drilling Co., 214 La. 951, 39 So.2d 429; Walter v. Calcasieu National Bank, 192 La. 402, 188 So. 43; Willis v. Brown, 2 Cir., 16 La.App. 305, 134 So. 277; Red River Construction Co. v. Nordstron, 2 Cir., 10 La.App. 474, 120 So. 655.
Under LSA-R.S. 7:14, the signing of a note in blank is prima facie authority to complete it as to amount; but “In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given * * *.« [3] N0j. 0nly the maker, but also an accommodation party who signed a negotiable instrument in blank may defend, as against a holder who acquired it prior to its completion, on the ground that the completed face amount was greater than that authorized to be filled in. Robertson v. Glasscock, 6 La.Ann. 124; Stout v. Eastern Rock I. Plow Co., 202 Ind. 517, 176 N.E. 844, 75 A.L.R. 1386; Union Trust Co. v. McCrum, 145 App.Div. 409, 129 N.Y.S. 1078, affirmed 1913, 207 N.Y. 721, 101 N.E. 1124.
The uncontradicted testimony of the two appellants show that the plaintiff through its manager accepted the note with their signatures on it but incomplete as to- face amount, and with the further knowledge that the face amount authorized to be completed was for a smaller sum than that which was actually added to the instrument subsequent to the appellants’ signature. Thus, any prima facie case that the plaintiff holder is a holder in due course is rebutted and the plaintiff has not borne its burden of proving the contrary, see LSA-R.S. 7:59; since to be a holder in due course the holder must take the instrument when, inter alia, “it is complete and regular upon its face” and without “notice of any infirmity in the instrument”, LSA-R.S. 7:52(1) and (4).
In our opinion, in the absence of any authority cited or found to the contrary, when *551 defendants allege that an instrument, incomplete when they sign it, has been completed for an amount greater than authorized by them, they are in a similar position to that of makers who raise the defense of a failure or lack of consideration for the negotiable instrument sued upon. See LSA-R.S. 7:28: “Absence or failure of consideration is a matter of defense as against any person not a holder in due course; and partial failure of consideration is a defense pro tanto, whether the failure is an ascertained and liquidated amount or otherwise”; Comment, “The Defenses of Want and Failure of Consideration in Negotiable Instruments”, 17 La.L.Rev. 466, (1957).
Under our jurisprudence, the plaintiff by introducing the negotiable instrument casts the initial burden upon the defendant of proving any absence or failure of consideration; but “if during the trial of the case the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted, and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence,” Bernard Bros. v. Dugas, 229 La. 181, 85 So.2d 257, 258. See also: Cooper v. Succession of Cooper, 334 La. 832, 101 So.2d 686; Eskew v. Walker, La.App. 1 Cir., 127 So.2d 210; Trailer Enterprise, Inc. v. Eikenbary, La.App. 1 Cir., 122 So.2d 655.
With regard to the present case, the appellants have made out an uncontradicted and apparently credible case that they signed the negotiable instrument sued upon in blank and authorized its completion only to refinance Grady Black’s unpaid car note in the amount of some six hundred-odd dollars. We note that the greater face amount of the negotiable instrument sued upon includes the re-financing also of another note for $621.40 signed one week earlier by the husband alone (see footnote 2 above), and we note additionally the further uncontradicted testimony that the husband and the plaintiff’s former manager were personal friends who spent much time together.
The plaintiff did not see fit to call its former manager to deny the appellants’ un-contradicted testimony that they had not authorized the instrument’s completion in the amount of $1,680, but only for a smaller amount or to explain otherwise the related transactions. The testimony of the plaintiff’s present manager indicates only that the $1,680 balance was reached by financing both the Commercial Credit car note and also the $621.40 note owed by Black to the plaintiff, but such testimony does not serve to rebut the testimony of the appellants that in signing the blank instrument they authorized its completion in sufficient amount as to refinance the Commercial Credit note only.
To conclude, in our opinion the appellants have by their testimony and the surrounding circumstances cast sufficient doubt as to the amount of the consideration shown upon the face of the note as to rebut any prima facie case that the instrument signed by them was intended or authorized to- be completed for the full amount of $1,680. The plaintiff holder has not met the burden consequently cast upon it by such testimony to prove that the note was completed within the authority conferred by the appellants when they signed the instrument in blank, since the plaintiff has not seen fit to call its former manager who on its behalf would have the information to explain or deny the facts pleaded and testified to by the appellants, nor to explain its failure to secure this individual’s testimony. See Robertson v. Glasscock, 6 La.Ann. 124, where under somewhat similar circumstances the holder was not allowed to recover the full face amount of the note from a surety who defended because the note had been completed for a greater amount than authorized.
Having reached this conclusion, the somewhat troublesome question is presented as to the amount, if any, of recovery to which the plaintiff is entitled under these circumstances, where with the complicity of its manager the negotiable instrument was *552 completed for a greater amount than authorized.
It can well he argued that the completion of an instrument in a greater amount than authorized should have the same effect as an unauthorized material alteration, in which case a holder not a party to the alteration may enforce payment thereof according to the original agreement, whereas, the instrument is completely avoided as to a party who himself made, authorized, or assented to the alteration. See LSA-R.S. 7:124, 125. As a matter of fact, there is a difference in the holdings of the various American jurisdictions, some holding that the filling in by the payee of an unauthorized amount invalidates the entire note, others holding that such unauthorized completion only precludes the recovery of an amount in excess of that actually authorized. See: Annotation, “Effect of payee of bill or note, executed in blank as to amount, filling it in for an amount in excess of that authorized,” 75 A.L.R. 1389; 10 C.J.S. Bills and Notes § 138, p. 591; 7 Am.Jur. “Bills and Notes”, Section 75, p. 830.
In Robertson v. Glasscock, 6 La.Ann. 124, the only Louisiana case in which the question seems to have been presented,[4] the court awarded judgment to the holder for the amount which the surety had authorized the principal to complete as the face amount of the instrument signed in blank; but the court also specifically noted the defendant had acknowledged his willingness to be bound for such sum. In the absence of authority to the contrary, and feeling that the result in the cited Robertson decision results in the more equitable disposition, we are of the opinion that recovery may be had against parties who sign an instrument in blank up to the amount which they authorized the payee to complete, even though under LSA-R.S. 7:14 the payee may not recover for any unauthorized excess amounts added.
The appellants testified that they intended to authorize the completion of the blank instrument in an amount of six hundred-odd dollars to refinance the husband’s unpaid car note, which the evidence indicates at the time had an unpaid balance of $657.98. On the other hand, the plaintiff suggests that the appellants should have realized that such refinancing would involve a substantial "discount” (i. e., the finance company charges for lending the money [5]), as well as charges for the car and life insurance ($100) and the vehicle license ($3).
Including these related charges, the total of $1,058.60 only is attributable to the refinancing of the car note, as included within the total face amount of $1,680 of the instrument sued upon. See Footnote 2 above. Although we may well surmise that the appellants might not as readily have signed the instrument had they realized that with the re-financing charges the total face amount for which they obligated themselves was $400 greater than they realized, it might likewise be argued that those who sign blank instruments cannot complain of the addition of customary charges to the face amount for which they intend to obligate themselves.
Considering the uncontradicted testimony of the appellants that they were informed that the instrument they signed in blank was to be for the amount of six hundred-odd dollars to refinance the husband’s unpaid car note (Tr. 76, 77, 82, 84), as well as the statutory requirement that to be enforceable *553 against persons who became parties thereto prior to its completion an instrument “must be filled up strictly in accordance with the authority given” (LSA-R.S. 7:14; italics added), we conclude that, under the circumstances of this case, the appellants’ liability should be limited as if the face amount of the note had been completed in the amount of $657.98, the actual amount of the Commercial Credit car note which was refinanced. For the plaintiff holder failed to rebut the appellants’ testimony that their liability was so limited or to produce some proof that the authorization to complete the blank instrument included the authorization to insert the substantial financing charges in excess of the face amount of the note refinanced.
By reconventional demand which is again urged in their appeal, appellants pray for judgment in reconvention against the plaintiff for attorney’s fees in the amount of $500 which they allege were expended in the defense of this action. It is well settled, however, that in the absence of a statute or contract, attorney’s fees are not allowable as an item of recovery, except where conservatory writs have been dissolved on motion tried separately from the merits. Hernandez v. Harson, 237 La. 389, 111 So.2d 320, 327; Brantley v. Tugwell, 233 La. 763, 66 So.2d 800; Loeblich v. Garnier, La.App. 1 Cir., 113 So.2d 95, 105-107, certiorari denied.
For the foregoing reasons, the judgment of the trial court is amended so as to reduce the amount of the judgment from $1,393 to $657.98, together with interest and attorney’s fees as provided by said judgment in accordance with the note sued upon. The costs of this appeal are assessed against the plaintiff-appellee; the costs of the lower court are assessed one-half to the plaintiff-appellee and one-half to the defendants-appellants. LSA-C.C.P. Art. 2164.
Amended and affirmed.

. Although preliminary default was obtained against Black, a final judgment was never entered against Mm, and he is not a party to this appeal. He was sub *549 poenaed by .the appellants to testify, but the Sheriff’s office was unable to find him; therefore, his testimony was not available at the trial.

. The sum of $450 is the cash which had been advanced to Grady Black by the plaintiff finance company through its then manager, McCarthy, on July 1, 1957, one week before the present note was signed. Black had signed a note in the amount of $621.40, which represented the $450 cash plus $171.40 “discount” (e. g., financing charges). This $621.40 note was cancelled in full and the $171.40 discount charges were rebated in full when the $450 loan for which it has been issued was included in the new note of $1,680 presently sued upon was completed on July 8, 1957. See: Tr. 54; 57-58; P-3, Tr. 26. Basically, the charges of the note for refinancing the Commercial Credit note (including the “discount” or finance charges attributable to this transaction) include the entire balance of the note except the $450 cash of the July 1st note and, the $171.40 of the “discount’’ attributes to it, or a net face amount for the car-refinancing loan and connected charges of $1,058.60.

. LSA-R.S. 7:14 provides in full: “Where the instrument is wanting in any material particular, the person in possession thereof has a prima facie authority to complete it by filling up the blanks therein. And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill up as such for any amount. In order, however, that any such instrument when completed may be enforced against any person who became a party thereto prior to its completion, it must be filled up strictly in accordance with the authority given and within a reasonable time. But if any such instrument, after completion, is negotiated to a holder in due course, it is valid and effectual for all purposes in his hands, and he may enforce it as if it had been filled up strictly in accordance with the authority given and within a reasonable time.”

. In Hippler v. Argus, Orleans, 16 La.App. 80, 133 So. 179, the maker was held liable for the fuE amount of a note initially signed in blank by her, even though she had authorized its completion in a smaller amount. The court there did not, however, discuss the applicability of LSA-R.S. 7:14, under which statutory provision the recovery could not have been permitted in such amount under the circumstances shown.

. The total “discount” charged by the plaintiff on this note was $450, but the share of this discount attributable to refinancing the $657.98 car note and related charges amounted to only $298.60. See Footnote 2 above.