**BRENTON BANK & TRUST COMPANY, CLARION, Iowa, Appellant,**

v.

**Goldie BEISNER, Executor of the Estate of John Schutt, Deceased, Appellee.**

**No. 61022.**

Supreme Court of Iowa.

July 26, 1978.

Dewayne A. Knoshaug, Clarion, for appellant.

Barker & McNeal, Iowa Falls, for appellee.

Considered by MOORE, C. J., and RAWLINGS, UHLENHOPP, HARRIS and McCORMICK, JJ.

UHLENHOPP, Justice.

This appeal involves a problem in the law of guaranty relating to revocation.

On March 18, 1970, John Schutt executed and delivered to Wright County State Bank (now claimant Brenton Bank & Trust Company, Clarion, Iowa) his written guaranty containing the following clauses among others:

> IN CONSIDERATION That The Wright County State Bank . . . has heretofore and may hereafter . . . discount notes for, loan money to and furnish other banking accommodations to C. R. Nelson Construction Co. Inc. of Belmond, Iowa . . . the undersigned . . . hereby absolutely and unconditionally guarantee to the Bank the full and prompt payment at maturity of any and all indebtedness, liability or obliga-

tion . . . of whatsoever kind and nature now or hereafter (until this guaranty be revoked as herein provided) due and owing from the Debtor, his or its personal representative, successor or assigns, to the Bank . . . and the undersigned agree to pay all costs, expenses and attorneys' fees . . . in enforcing this guaranty. . . .

The liability hereunder shall in no wise be affected or impaired by . . . any sale, pledge, surrender, compromise, settlement, release, renewal, extension, indulgence, alteration, substitution, exchange, change in, modification or other disposition of the Indebtedness, any evidence thereof, or any security or collateral therefor; by any acceptance by said Bank of security for or other guarantors of any Indebtedness; . . . or by any application of payments or credits thereon.

The Bank shall not be required to first resort for payment to said Debtor, or other persons or corporations, their properties or estates, or to any collateral security, property, liens or other rights or remedies whatsoever. . . .

The liability of the undersigned hereon shall not, at any time, exceed the sum of $30,000.00 and all expenses hereinbefore mentioned but the liability hereon shall not be released or affected if at any time the Indebtedness exceeds that amount and the Bank may apply all sums received by it from the Debtor, from collateral (in case of the death, insolvency or bankruptcy of the Debtor) from claims against the Debtor's estate and from any other source, first, in payment of such excess. . . .

The undersigned may revoke this guaranty by written notice . . . but such revocation shall not affect or release the liability of the undersigned for the then existing Indebtedness, or any renewals thereof, theretofore or thereafter made . . . .

This guaranty and every part thereof shall be binding upon the undersigned and upon the heirs, legal representatives, successors and assigns of the under-signed, and of each of them, respectively, and shall inure to the benefit of the Bank, its successors and assigns.

From time to time Nelson Construction borrowed funds from Brenton Bank, made payments, gave collateral, and refinanced the balance of its obligation to Brenton by extensions and renewals. The extensions and renewals were affected by executing new notes and receiving back the superseded ones marked paid.

On July 6, 1972, Nelson owed Brenton $61,000. On that date the probate court appointed a conservator of the property of the guarantor, Schutt. Thereafter Brenton continued doing business with Nelson as before, and Nelson's obligation to Brenton never fell below $30,000 and was usually substantially larger.

Litigation subsequently intervened resulting in a stipulation, and still later Schutt's conservator in writing revoked the guaranty. In the view we take of the case these events are not material to the present decision.

Schutt subsequently died. The probate court appointed Goldie Beisner as executor of his estate. Brenton filed a claim against Schutt's estate for $30,000 based on the guaranty. The executor denied the claim and, after hearing, the probate court also denied it. Brenton appealed.

■ We note at the outset that the bank's possession of other collateral would not relieve Schutt or his personal representative on the guaranty. 38 Am.Jur.2d Guaranty § 85 at 1092 ("The fact that the creditor, in order to insure payment of the debt which is due him, has taken additional security therefor does not have the effect of releasing or discharging the guarantor of liability on his contract of guaranty."); 38 C.J.S. Guaranty § 80 at 1249. We thus turn to the parties' principal disagreement, relating to the instituting of the conservatorship.

■ At all material times Nelson owed the bank at least $30,000 on renewals or extensions of indebtedness. We start with

the premise that if Schutt had not revoked the guaranty and had not been placed under conservatorship, he would have been liable for $30,000 and costs of collection on the extensions and renewals of Nelson's indebtedness. The broad language of the guaranty encompassed those obligations, in contrast to the narrower language of such guaranties as in *Merchants' National Bank v. Cressey,* 164 Iowa 721, 146 N.W. 761. Moreover, since Nelson's original indebtedness and renewals and extensions thereof were within the guaranty, a revocation of the guaranty would not terminate liability as to the original indebtedness and renewals and extensions thereof but would operate only as to new indebtedness of Nelson after the revocation. *Exchange National Bank v. Hunt,* 75 Wash. 513, 135 P. 224. See also *Corn Exchange Bank Trust Co. v. Gifford,* 268 N.Y. 153, 197 N.E. 178; *Wise v. Miller,* 45 Ohio St. 388, 14 N.E. 218; *Bennett v. First National Bank of Norfolk,* 213 Va. 672, 194 S.E.2d 903. We have here extensions and renewals of old indebtedness.

■ The question relates to the effect of renewals and extensions of the old indebtedness after the instituting of the conservatorship. In the Union Trust cases this court likened the instituting of a conservatorship to the death of a guarantor. *Union Trust & Savings Bank v. State Bank,* 170 N.W.2d 674 (Iowa), second appeal, 188 N.W.2d 300 (Iowa). Hence we inquire, what effect upon a guaranty does the death of the guarantor have? The rule of contracts generally is that death of a contract obligor does not relieve his estate of liability, and this rule applies to guaranties. 38 Am.Jur.2d Guaranty § 69 at 1070 ("The rule governing contracts generally, to the effect that the death of a party to a contract does not by operation of law terminate the liability which was imposed thereby, controls the result in guaranty cases."). The death of a guarantor operates like a revocation, at least where the guarantee has notice of the death as the bank did here. The death operates prospectively upon the guaranty; it prevents creation of liability on the guaranty for new indebtedness of the debtor, but it does not terminate liability on the guaranty for existing indebtedness of the debtor—or for extensions or renewals thereof where as here the guaranty covers extensions and renewals. *Bennett v. Checotah State Bank,* 176 Okl. 518, 56 P.2d 848; *Casey v. Gibson Products Co.,* 216 S.W.2d 266 (Tex.Civ.App.). See *General Silk Importing Co. v. Smith,* 200 App.Div. 750, 194 N.Y.S. 11. The guarantor's contractual obligation under the guaranty is to answer not only for the indebtedness but for extensions and renewals, and this obligation survives and binds not only the guarantor but also his estate—here his conservatorship. The extensions and renewals are not "new" debt but are the same debt in changed form. *Merchants' National Bank v. Cressey,* supra, 164 Iowa 721, 728, 146 N.W. 761, 764 ("It was in no sense an original borrowing of money, a creation of indebtedness such as was contemplated by the contract, but was only a change in form of that which spoke for the old debt."). In effect the guaranty clause covering extensions and renewals is like a clause waiving the defense of extension of time granted the debtor. Such a waiver clause is part of the contract between the guarantee and guarantor, and that contract survives the guarantor's death.

■ Before the conservatorship, Schutt was bound to the bank for $30,000 plus collection costs. Had Nelson paid its debt below $30,000 after the conservatorship was instituted, Schutt and now the executor would be liable only for the lowest balance after the conservatorship was in effect, together with collection costs. But here the balance, in extensions and renewals, never was below $30,000, and the executor is now liable in that sum with collection costs.

We return the case to district court for allowance of Brenton's claim against the executor for $30,000 and court costs including an attorney fee in the amount authorized by § 625.22 of the Code.

REVERSED.