## No. 79SC130

## Robert A. Gandy v. Park National Bank, a National Banking Institution

(615 P.2d 20)

Decided August 5, 1980.

Ware and Marroney, David E. Ware, for petitioner.

William F. Mattoon, for respondent.

*En Banc.*

JUSTICE LEE delivered the opinion of the Court.

We granted certiorari to review the decision of the court of appeals in *Park National Bank v. Gandy,* 42 Colo. App. 203, 595 P.2d 704 (1979). We now reverse.

The facts are not in dispute. On February 28, 1975, the U.S. National Mortgage Company borrowed $25,000 from respondent, Park National Bank (bank), giving two promissory notes, one for $15,000 due in ninety days, and one for $10,000 due in sixty days. The interest rate on both notes was eleven and one-half percent. On the same day, petitioner, Robert A. Gandy, executed a "Continuing Guaranty" of the notes with individual liability not to exceed $15,000.

On April 28, 1975, Gandy mailed a letter of revocation of the guaranty, which was admittedly received by the bank. At that time, the balance on one note was $15,000 and on the other was $3,000. Subsequent to Gandy's revocation, the bank extended the date of payment on each note four times, and on one extension increased the rate of interest on the notes to thirteen percent. Gandy was not informed of these actions by the bank.

In September 1976, the bank brought an action against Gandy to recover on the notes. The district court found that Gandy continued to be liable on the guaranty, and entered judgment against Gandy for $15,000.

The court of appeals affirmed, holding that "the guaranty expressly authorized extensions and renewals as well as changes in the interest rate," and that "no new indebtedness was created after defendant revoked his guaranty." *Park National Bank v. Gandy, supra.*

In interpreting a contract of guaranty, this court has held that "[t]he liability of the guarantor is not to be extended by implication beyond the express limits or terms of the instrument, or its plain intent. It has been said that a guarantor is like a surety, a favorite of the law." *Burkhardt v. Bank,* 127 Colo. 251, 256 P.2d 234 (1953).

The contract of guaranty signed by Gandy states in pertinent part:
"(1) . . . The word 'indebtedness' is used herein in its most comprehensive sense and includes any and all advances, debts, obligations and liabilities of Borrowers or any one or more of them, heretofore, now, or hereafter made, incurred or created, whether voluntary or involuntary and

however arising, whether due or not due, absolute or contingent, liquidated or unliquidated . . . .

. . .

"(2) . . . This is a continuing guaranty relating to any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied. This guaranty shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions . . . .

. . .

"(4) Guarantors authorize Bank, without notice or demand and without affecting their liability hereunder, from time to time to (a) renew, compromise, extend, accelerate or otherwise change the time for payment of, or otherwise change the terms of the indebtedness or any part thereof, including increase or decrease of the rate of interest thereon . . . ."

We are concerned here with whether the extension of the payment date on the debt by the bank "created" an indebtedness after the bank had received written notice of Gandy's revocation of his guaranty. We conclude that it did.

The term "indebtedness," as defined in the contract of guaranty, specifically includes a debt "arising under successive transactions which shall either continue the indebtedness or from time to time renew it." Thus, any extension or renewal of the original debt is an "indebtedness" within the express language of the guaranty.

The contract further provides that the guaranty shall not apply to an indebtedness if it is created "after actual receipt by Bank of written notice of its revocation as to future transactions." In this case, the bank "created" an indebtedness by granting to the borrower an extension of the original debt after it had received notice of Gandy's revocation. By doing so, we hold that the bank relieved Gandy of liability for the indebtedness. To hold otherwise would render without meaning the express authority to revoke the contract of guaranty contrary to the fundamental rule that a contract must be construed as a whole and effect given, if possible, to every provision. *Pub. Util. v. Durango,* 171 Colo. 553, 469 P.2d 131 (1970); *Brown v. Brown,* 161 Colo. 67, 419 P.2d 444 (1966).

This conclusion is consistent with the generally recognized rule that, unless specifically provided for "in clear and unequivocal terms," *Straus-Frank Co. v. Hughes,* 138 Tex. 50, 156 S.W.2d 519 (1941), "a continuing guaranty does not cover renewals, after revocation, of obligations which were covered by the guaranty at the time of revocation." *Southern California First National Bank v. Olsen,* 41 Cal. App.3d 234, 116 Cal. Rptr. 4 (1974); *Bank of United States v. Andron,* 155 Misc. 21, 277 N.Y.S. 594 (1934); Annot. 100 A.L.R. 1236 (1936).

In *Southern California First National Bank v. Olsen, supra,* the contract of guaranty provided that that guaranty "'shall not apply to any indebtedness created after actual receipt by Bank of written notice of its revocation as to future transactions.'" The contract also provided that an indebtedness included "'all renewals and extensions . . . .'" In that case, the note was renewed by the bank at a higher rate of interest after the bank had received notice of revocation from the guarantor. The California court held that the bank's action created a new indebtedness which was not covered by the contract of guaranty. *Accord Merchants' Nat. Bank v. Cressey,* 164 Iowa 721, 146 N.W. 761 (1914); *Bedford v. Kelley,* 173 Mich. 492, 139 N.W. 250 (1913).[1]

Although both the court of appeals and respondent bank cite *First New Jersey Bank v. F.L.M. Business Machines, Inc.,* 130 N.J. Super. 151, 325 A.2d 843 (1974) in support of the proposition that an extension or renewal does not create a new indebtedness, we find that case to be consistent with the general rule as stated above.

In *First New Jersey Bank,* the guaranty provided that it could be terminated by written notice, but that the guarantor "'shall nevertheless remain liable with respect to the aforesaid Obligations . . . and *any renewals, extensions,* or other liabilities arising out of the same . . . .'" *First New Jersey Bank v. F.L.M. Business Machines, Inc., supra.* (Emphasis added.) The guaranty thus specifically provided that revocation would not terminate the liability of the guarantor upon renewal or extension of the debt. *Accord, Brenton Bank & Trust Co., Clarion v. Beisner,* 268 N.W.2d 196 (Iowa 1978).

We find ample support, both in the language of the contract of guaranty before us and in the case law, for the conclusion that Gandy was relieved of liability for transactions entered into by the bank after it had received notice of his revocation of the guaranty as to future transactions.

The judgment is reversed with directions that the case be remanded to the district court for entry of judgment of dismissal in favor of Gandy.

JUSTICE ROVIRA dissents.

CHIEF JUSTICE HODGES does not participate

JUSTICE ROVIRA dissenting:

I respectfully dissent. The language of the guaranty agreement executed by Gandy permits the extension of the date of payment of the

---

[1] *Cf. American City Bank v. Tourtelot,* 86 Cal. App. 3d 585, 150 Cal. Rptr. 361 (1978) (Indebtedness renewed by bank after it had received notice of guarantor's death. Estate of guarantor held liable under guaranty which provided: "'*Either before or after revocation* hereof . . . the bank may alter, compromise, accelerate, extend or change the time or manner for the payment of any indebtedness.'" (Emphasis added.))

guaranteed promissory note. By extending the date of payment, the respondent did not create a new indebtedness. Rather, it took a course of action affecting the existing indebtedness, clearly contemplated by the guaranty contract.

Conclusions as to the scope of a guaranty agreement must be based on the language of the particular agreement. In this case, the authority given to the respondent bank in paragraph 4 of the guaranty agreement to "renew, compromise, extend, accelerate, or otherwise change the time for payment" is to be read in conjunction with paragraph 1, which defines "indebtedness," and paragraph 2, which provides that the guaranty relates to "any indebtedness, including that arising under successive transactions which shall either continue the indebtedness or from time to time renew it after it has been satisfied."

My reading of the agreement leads to the conclusion that a new "indebtedness" was not created when the respondent extended the note, for to create means "to bring into existence: make out of nothing and for the first time." *Webster's Third New International Dictionary* (1971). Further, the funds were borrowed by the mortgage company before the letter of revocation was issued by Gandy. Extensions of the existing notes were made as contemplated by the guaranty agreement, but these extensions continued the prior obligation and did not create any new obligation.

I cannot agree with the majority opinion in its attempt to distinguish *First New Jersey Bank v. F.L.M. Business Machines, Inc.,* 130 N.J. Super. 151, 325 A.2d 843 (1974). In that case, the guaranty agreement provided that the guarantor "shall nevertheless remain liable with respect to the aforesaid Obligations . . . and any renewals, extensions, or other liabilities arising out of the same." *Id.* 130 N.J. Super. at 156, 325 A.2d at 846. The majority finds no similar language in the guaranty agreement involved in this case, but, in my view, a fair reading of that agreement leads to the conclusion that Gandy authorized renewals and extensions of the note and guaranteed the payment of the indebtedness as it would from time to time be continued or renewed. I would affirm.