**Dolan GRAY, Lorinda Wilvers, John R. Smith, Dale Carpenter, Elwyn J. Green, and Leonard Imes, as individuals, Plaintiffs-Appellants,**

**v.**

**EMPIRE GAS, INC., a Missouri corporation, and Empire Gas, Inc. of Denver, a Colorado corporation subsidiary of Empire Gas, Inc., Defendants-Appellees.**

**No. 81CA0636.**

Colorado Court of Appeals,
Div. I.

March 8, 1984.

Myrick, Newton & Sullivan, P.C., William E. Myrick, Michael P. Serruto, Denver, for plaintiffs-appellants.

Trujillo & Bieda, P.C., Michael H. Trujillo, Monte Vista, John Edward Price, Austin, Tex., for defendants-appellees.

METZGER, Judge.

In this action for compensation withheld, penalties, and attorney's fees, plaintiffs,

Dolan Gray, Lorinda Wilvers, John R. Smith, Dale Carpenter, Elwyn Green, and Leonard Imes (employees), appeal a partial summary judgment entered in favor of defendants, Empire Gas, Inc., a Missouri corporation, and its subsidiary, Empire Gas, Inc. of Denver (Empire Gas). We reverse and remand for further hearing.

In 1970 Empire Gas implemented a "Growth Bonus Program." Employees each participated in this program during the period beginning November 1, 1978, and ending February 28, 1979. Empire Gas, however, did not pay the amount the employees calculated was due them under the plan, and they made written demand for full payment of the bonuses earned. Thereafter, Empire Gas discharged each of the employees.

Employees brought this action to recover the amounts withheld, claiming they constituted wages. Prior to trial, however, the trial court held the unpaid bonuses were not "wages" as defined by § 8–4–101(9), C.R.S. It ruled that the bonuses were earnings from an employee profit-sharing plan, and, therefore, were a form of deferred compensation as defined by § 8–4–105(3), C.R.S. Thus, the court concluded employees were entitled to neither penalties nor attorney fees under §§ 8–4–104 and 8–4–114, C.R.S.

The "Growth Bonus Program" initially became effective on July 1, 1975, and was revised in some respects on July 1, 1978; both versions provided that all other existing commission programs were discontinued. It provided for the establishment of a fund, and for contributions to the fund based on the company's appliance sales, labor charges, retail bulk gasoline sales, tank rentals, and cylinder gas sales during the period of the program. The fund was to be divided every four months among employees participating for the full term of accumulation. Distribution to the individual employee was calculated on the basis of his or her total gross earnings.

Section 8–4–101(9), C.R.S., defines wages or compensation as:

"[A]ll amounts for labor or service performed by employees, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculating the same ... *if the labor or service to be paid for is performed personally by the person demanding payment.*" (emphasis added)

 In construing the agreement we must consider the plan in its totality. *Gandy v. Park National Bank*, 200 Colo. 298, 615 P.2d 20 (1980). Our review of the pertinent documents indicates that the language used in the plan envisions that the payments to be made to employees were wages. The plan replaced all existing commission programs. It provided for payments in cash to supplement employees' regular earnings based on their efforts in the areas of sales and company growth. None of the components of the fund were based on net profit; only one was based on "gross profit," and the remaining components were based on the prior year's gross sales figures.

This plan is substantially different from that discussed in *Lampley v. Celebrity Homes, Inc.*, 42 Colo.App. 359, 594 P.2d 605 (1979); that plan was titled "Profit Sharing Plan" and all employee distributions pursuant to the plan were keyed to "profits."

Thus, we conclude that the trial court was incorrect when it concluded that the Growth Bonus Program was "nothing more than a profit-sharing plan."

Employees seek an award of the 50 percent penalty on all unpaid wages pursuant to § 8–4–104(1) and (3), C.R.S. According to that statute, employees are entitled to a 50 percent penalty if: (1) employment is terminated; (2) "wages" are not timely paid; and (3) the employer fails to establish a good-faith legal justification for its refusal to pay wages upon the employee's request.

 Here, all elements of § 8–4–104(1) and (3), C.R.S., have been met except the rationale for the failure to pay wages.

While there was a determination that plaintiffs were entitled to the full amount provided by the plan, the issue of the employer's justification, if any, was not presented because of the trial court's determination that the amounts at issue were not wages.

Therefore, we remand this matter for hearing to determine whether Empire Gas had any legal justification for its refusal to pay the wages due and owing to employees pursuant to § 8–4–104(1) and (3), C.R.S., and for entry of judgment accordingly.

Since employees have also requested attorney fees pursuant to § 8–4–114, C.R.S., we remand that issue to the trial court for entry of judgment in favor of employees for all reasonable attorney fees and for costs in connection with this action, including those incurred on appeal.

The judgment denying the statutory penalty and attorney fees is reversed and the cause is remanded for further proceedings in accordance with this opinion.

BERMAN, J., concurs.

PIERCE, J., dissents.

PIERCE, Judge, dissenting.

I respectfully dissent. The "bonus" plan provided for the establishment of a fund and for contributions to the fund based on the profits of the company on appliance sales, labor charges, retail bulk gasoline sales, tank rentals, and cylinder gas sales during the period of the program. All of these items were based on either a percentage or on a certain amount of profit in relation to that of the previous year. The fund was to be divided every four months among employees participating for the full term of the accumulation.

I agree with the majority that the plan should be considered in its totality. *Gandy v. Park National Bank*, 200 Colo. 298, 615 P.2d 20 (1980). I also agree that the pertinent statutory provision which determines whether the sums to be paid were a profit sharing plan or wages is that portion of § 8–4–101(9), C.R.S., which states that such payments are wages:

"[I]f the labor or service to be paid for is performed personally by the person demanding payment."

Applying the totality of the facts regarding this plan to the statute, I conclude that the trial court was correct when it stated:

"The [Fund] is not distributed on the basis of an individual employee's contribution to the total sales, but rather the bonus payable to each employee is calculated on the basis of his total gross earnings. Each employee's share of the bonus fund bears the same ratio to the total bonus of the company as the total of that employee's compensation bears to the total compensation paid to all employees of the company. This is nothing more than a profit sharing plan ...."

I am unable to distinguish the plan set forth here in any material way from that which was in effect in *Lampley v. Celebrity Homes, Inc.*, 42 Colo.App. 359, 594 P.2d 605 (1979). Because the earnings here were derived from a profit sharing plan, no penalties or attorney fees attached under §§ 8–4–104 and 8–4–114, C.R.S. *Lampley v. Celebrity Homes, Inc., supra.*

Therefore, I would affirm the judgment.