FOURNET, Chief Justice.
John F. Masset instituted this suit against J. J., Bertha H., and Charles Manson, Jr., owners of a tract of land on Jefferson Highway in Jefferson Parish, seeking to be declared the owner of a building (designated as No. 4100) erected on the tract by him pursuant to a contract of lease, joining as a party defendant Mrs. Fred C. Beckler, Jr., the present occupant of the building. From a judgment in Masset’s favor ordering Mrs. Beckler to vacate the .premises within 30 ■days, she has appealed suspensively[1]
The plaintiff rented from the Mansons under a written contract of lease[2] a vacant tract of land on Jefferson Highway for a period of five years, beginning June 1, 1945, and ending May 31, 1950, at a monthly rental of $60, renewal privileges being at the pleasure of the lessor. Immediately thereafter he constructed a building on this tract and subsequently entered into a written contract with Donald Henry leasing the building with improvements to- him for bar and restaurant purposes for a period of 53 months, beginning January 1,1946, and ending May 31, 1950 (the termination date of his lease of the ground from the Mansons), at a monthly rental of $243, evidence by 53 rent notes executed by Henry. On the day following (January 2, 1946) these parties executed what may be termed a supplemental agreement wherein, after the above facts are stated, it is stipulated that Masset “will upon the termination of his lease with the said Donald Henry, assign to the said Donald Henry the lease which he has made with” the Mansons, “Provided that the said Donald Henry shall live up to and meet all of the terms and conditions of lease entered into” with Masset, and “provided that this said lease between the parties hereto is still in full force and effect at the time of its expiration.”
Henry, who was at the time personally operating another restaurant and bar on the Airline Highway known as “Henry’s Rotisserie,” immediately painted and redecorated the building at 4100 Jefferson Highway and opened it as a bar and restaurant under *1072 the name “Club Ninety,” with his then wife in charge as manager.
It appears the Henrys were having marital difficulties that culminated in the institution of a suit for separation by Mrs. Henry in August of 1947, and, on August 8, 1947, she secured an injunction preventing her husband from disposing of any community property or assets. Subsequently, in accordance with Henry’s written request of August 15, 1947, Masset released Henry from his obligation under the lease of Janu-. ary 1 and the agreement of January 2, 1946, returning to Henry his remaining rent notes duly cancelled. Masset, however, permitted the appellant (who was then Mrs. Henry) to remain in possession of the building at the same monthly rental until, in January of 1950, he notified her in writing of his intention to repossess the building and requested that she vacate the premises.[3] After having abandoned eviction proceedings instituted against Mrs. Beckler following her refusal to vacate, Masset notified the Mansons by registered letter dated April 27, 1950, of his intention to remove the building in accordance with his lease contract, sending a copy of the letter under registered mail to Mrs. Beckler, the former Mrs. Henry. He was prevented from removing the building, however, by a restraining order secured at the instigation of Mrs. Beckler. Although the record does not show what was the ultimate conclusion of the injunction proceeding, the instant suit followed on March 28, 1951.
The Mansons answered, disclaiming any interest in the building. Following the dismissal of various exceptions, including exceptions of no cause and no right of action, Mrs. Beckler answered claiming ownership of the building under her averments that the lease and supplemental agreement between Masset and Henry were actually entered into in December of 1945 and postdated to January 1 and 2 of 1946; that at the time of their confection she was estranged and living apart from her husband, to the knowledge of Masset; that she subsequently, during the latter part of January, 1946, entered into a verbal agreement with the plaintiff and her husband under which Henry was relieved of all of his rights and obligations under the documents of January 1 and 2, 1946, and she was granted an oral lease of the property under these same terms and conditions, one condition being that at the termination of the lease on May 31, 1950, she would become the .owner of the building. In the alternative, she seeks to- recover $5,964.13 for improvements placed on the premises, and, in reconvention, the sum of $40,000, for humiliation, annoyance, physical injury, and loss of profits.
Counsel for appellant are here reurging the exceptions of no cause and no right of action, contending that Mrs. Beckler’s title *1074 has never been put at issue since this is a petitory action, involving title to an immovable by nature, and the plaintiff has not proved written title in himself and timely objection was made during the trial on the merits to the introduction of parol evidence to establish such title.
Counsel are clearly in error in this respect. The evidence unmistakably shows that under the express written agreement between Masset and the Mansons, the plaintiff was the owner of the building erected, by him on the premises and, as such, entitled to remove it at the termination of the lease, unless previously purchased by the Mansons. The Mansons have disclaimed any title thereto. The appellants have, additionally, recognized plaintiff’s title by leasing the building from him. Mrs. Beckler not only, under her contention, leased this from him orally, but, if it is indeed an immovable by nature despite the provisions in the Manson lease, as she claims, then she is, herself, attempting to establish title to the building by oral agreement, in contravention of the provisions of Article 2275 of the LSA-Civil Code.
The basis upon which Mrs. Beckler’s claims are predicated is not borne out by the evidence. In fact, we think the evidence preponderates in favor of the plaintiff. Her allegations are that this oral agreement was entered into by her, her former husband, and Masset, and while in her testimony she sought to infer the lease was orally assigned to her with the knowledge and understanding of Henry, she stated most positively on the witness stand that when Masset came to collect the rent for the first month on January 31, 1946, she personally sat down with him and they, together, orally agreed she would be the actual lessee of the building under the same terms as set out in the documents of January 1 and 2, 1946. Her testimony is not only denied by Masset, who stated his dealings throughout were with Henry alone and that under no circumstance could he have entered into an oral agreement with Mrs. Beckler concerning this building in the face of his written contract with Henry, .but it is otherwise totally uncorroborated.
On the other hand, Masset is corroborate ed throughout by Henry, who testified he had never been released of his written obligations under the documents of January 1 and 2, 1946, until he made such request in writing in August of 1947, at which time Masset obligingly complied. The evidence further establishes that Henry personally painted and redecorated the building, spent a great deal of money equipping it, furnished supplies, and, some four months after January 1, 1946, bought fans for the place from Masset, still later arranging to lease from him additional ground space. As late as August of 1946 there is evidence tending to show that Henry secured insurance covering the equipment in the building. He testified further that during the entire year of. 1946 and up until the institution of the divorce proceedings in 1947 he supervised the operation of the business.
However, even conceding Mrs. Beckler has, in fact, proved that she succeeded to *1076 all of the rights Henry had under the. written agreements of January 1 and 2, 1946, by virtue of this alleged oral agreement, there is nothing in either of these documents from which it can be concluded that Henry was to become the owner of the building at the termination of the lease on May 31,. 1950. The document of January 1, 1946, is a regular contract of lease covering the building, and that of January 2 nothing more than an agreement to assign to Henry whatever right he had to continue or renew the lease of the ground from the Man-sons at the termination of the lease. In other words, Masset was going to make available to Henry the same privilege he had under the Manson-Masset lease, i. e., “to notify Lessors, on or before April 1, 1950, whether or not he wants to renew the lease,” the lessors reserving in themselves the privilege of rejecting all offers of renewal. As just pointed out, there is not only no language in the instrument from which it can be concluded Masset was to convey his building to Henry at the termination of the lease, but there is contained in the Masset-Henry lease covering the rental of the building the identical provision contained in the Manson-Masset lease, i. e., Henry agreed to notify Masset in writing if he wished to retain possession of the building “for one or more years from the expiration of this Lease,” and Masset reserving the privilege of rejecting all offers to renew.
With respect to Mrs. Beckler’s claim for the value of the improvements placed on the building, the testimony discloses that during the first half of 1946 some $2,300-was spent for labor and material in connection with fixing the premises for operation, as “Club Ninety,” and for conversion of a. part of the building into living quarters for Mrs. Beckler’s personal use. Furthermore, under the express terms of the Masset-Henry lease, to which Mrs. Beckler claims she has succeeded, “All additions or improvements placed on the premises are to become-the property of the Lessor at the termination of the lease unless otherwise stipulated herein,” and there is nothing to the contrary therein stipulated.
In view of the conclusion we have-reached, the reconveptional demand must fall, being based on court actions taken by the plaintiff in his attempts to regain possession of the building that was rightfully his.
Counsel for appellant finally argues-that inasmuch as the judgment rendered by the lower court was not responsive to-plaintiff’s prayer and pleadings, the case should be remanded so that a corrected judgment might be rendered in the lower court. This is not necessary, as we are authorized to amend and recast judgments.
Accordingly, for the reasons assigned, the judgment of the lower court is amended and recast to read as follows:
It is ordered, adjudged, and decreed that-there be judgment in favor of the plaintiff, John F. Masset, and against the defendants, J. J. Manson, Bertha Manson, Charles- *1078 Manson, Jr., and Mr. and Mrs. Fred C. Beckler, Jr., decreeing the plaintiff to he the owner of the building located on the property owned by the Mansons on Jefferson Highway and designated as No. 4100, which is now occupied by Mr. and Mrs. Fred C. Beckler, Jr., and operated by them .as “Club Ninety.”
It is further decreed that Mr.' and Mrs. Fred C. Beckler, Jr., are hereby ordered to vacate this building within thirty (30) days from the date of this judgment, and that the plaintiff is to have a reasonable time thereafter to remove the building from the land owned by the Mansons.
The appellants, Mr. and Mrs. Fred C. Beckler, Jr., are to pay all costs.

. Although Fred C. Beckler, Jr., was not made a party defendant, he has joined his wife in all of her pleadings and in her appeal.

. The lease itself was not produced by the Mansons in response to a subpoena duces tecum secured at the instance of appellant’s attorneys, but its contents were established by a copy made by Mr. Beckler, which was accepted by all parties as substantially correct. Among the provisions of the lease is the stipulation that at its termination “the Lessee [Masset] has the right to remove any building erected on this portion of Ground, provided the rent has been paid in full, and he has notified the Lessor at least 80 days before starting to Remove.” (Brackets ours.)

. Mrs. Henry having secured a divorce from Henry on December 29, 1950, was then married to Fred C. Beckler, Jr.