85 So.2d 257

BERNARD BROTHERS

v.

Lodias J. DUGAS.

No. 41889.

Jan. 16, 1956.

Dugas, Bean, Bertrand & Smith, Lafayette, for defendant.

Edwin W. Edwards, J. Lyle DeBellevue, Crowley, for plaintiff-appellee.

HAWTHORNE, Justice.

Bernard Brothers instituted executory proceedings to sell property belonging to Lodias J. Dugas in the City of New Iberia in satisfaction of a demand mortgage note which it held. This note was executed by Dugas on July 14, 1952, for the principal sum of $31,200 with interest at the rate of 6 per cent per annum from date and 10 per cent attorney's fees.

Prior to the sale Dugas brought injunctive proceedings in which he alleged that he owed Bernard Brothers only $20,-000, as he had received from it only this amount, and that therefore there had been a partial failure of consideration for the note. In this petition Dugas also alleged that he had tendered to Bernard Brothers $20,000, with accrued interest, the amount he admitted to be due on the note. He prayed for and obtained a temporary restraining order.

After this petition for a preliminary injunction was tried on its merits, the lower court rendered in favor of Bernard Brothers, plaintiff in the executory proceedings and defendant in the injunction proceedings, a personal judgment against Dugas in the sum of $26,300 with interest at the rate of 6 per cent per annum from July 14, 1952,

until paid plus 10 per cent of the aggregate amount of principal and interest as attorney's fees. From this judgment Dugas, defendant in the executory proceedings and plaintiff in the injunction proceedings, appealed to this court.

 Under the Negotiable Instruments Law of this state and the jurisprudence of this court, every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. R.S. 7:24; Moss v. Robinson, 216 La. 295, 43 So.2d 613, and cases there cited. For this reason, a plaintiff suing on a negotiable instrument is not required to produce any proof of consideration when he introduces the instrument into evidence, and this remains true in spite of the fact that the defendant in his answer may have alleged lack of consideration. Absence or failure of consideration is a matter of defense as against any person not a holder in due course, and partial failure of consideration is a defense pro tanto. R.S. 7:28. The burden is thus on the defendant of going forward with the evidence and rebutting the prima facie case in favor of plaintiff. However, if during the trial of the case the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted, and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence. Moss v. Robinson, supra.

These principles of negotiable instruments law are recognized by all parties to the instant suit, and with these principles in mind let us now analyze and discuss the evidence adduced.

Bernard Brothers is a partnership engaged in the automobile business in Rayne, Louisiana, and is composed of two brothers, Raleigh Bernard and Wilfred Bernard. For three or four days before the execution of the note and mortgage in question, the parties to this suit had been discussing the proposed loan, and on the date of its execution Dugas and Raleigh Bernard went to the office of an attorney in New Iberia, where the note and mortgage were prepared and executed. No money was given to Dugas at this time. After the execution of this note and mortgage in New Iberia, Bernard Brothers' Rayne attorney was called and informed that all parties would meet him in his office to complete the transaction. According to the Bernard brothers, later that afternoon all parties met in the Bernards' Rayne office, and the two brothers at that time delivered to Dugas $6,300 in bills of large denomination which they had with them at the time. Then suddenly, according to the Bernards' testimony, they realized that they were supposed to count the money before their Rayne attorney; accordingly they all went to his office, where $20,000 was counted out to Dugas in bills of large denomination. Dugas admits receipt of this $20,000, and it is not an issue in the case. He denies, however,

having received $6,300 in Bernard Brothers' place of business. After leaving the lawyer's office the Bernards accompanied Dugas to the airport in Lafayette, where he bought a plane ticket. The Bernards say that they did not know where Dugas was going, but that one of them made a reservation for him at a hotel in Memphis for July 16, two days after the execution of the note.

According to the Bernard brothers, the consideration for the $31,200 note was: $6,300 in cash paid to Dugas in their place of business in Rayne; $20,000 given to Dugas in cash at their attorney's office; and a Cadillac worth $4,900 which was to be delivered to Dugas in Memphis, Tennessee, but never was.

One of the Bernard brothers met Dugas in Memphis on or about July 16, and testified at the trial that he offered to deliver the Cadillac to Dugas at that time. However, prior to delivery he asked Dugas to pay him $4,900, the purchase price of the car. He stated that this had been agreed upon between them, and that upon the payment of this amount in cash he was to give Dugas credit for it on the note, but that the Cadillac was not delivered because Dugas did not pay this sum.[1] When this Bernard returned to Rayne, demand was made upon Dugas for payment of the note in full, and upon Dugas' failure to make

payment executory process was instituted on July 30, 1952, approximately two weeks after the date of the note's execution.

According to their testimony it was necessary for the Bernard brothers to borrow $15,000 from their brother and sister in Texas to make this loan, and a few days before the note was executed this money was delivered to them in cash in Rayne. Although these brothers went to some trouble to secure the amount that they say they loaned to Dugas, they testified that they had no idea for what purpose Dugas wanted the money, nor was there any agreement as to when it would be repaid! They also testified that they made the loan to collect the interest which would become due on it and to make a profit of $500 on the sale of the Cadillac. If it was the interest with which they were concerned, it is strange that they demanded payment of the note only a few days after its execution. Moreover, although they are in the automobile business and not in the loan business, it seems odd that they would go to so much trouble to make a large loan just to realize the profit from the sale of an automobile. To us it also seems somewhat unusual for them to have delivered the loan in cash in bills of large denomination when they had no idea of the purpose for which Dugas wanted this large sum of money.

1. In this connection we should like to point out that Bernard Brothers makes no serious contention that it is entitled to recover $4,900 of the $31,200 note, as the Cadillac was never delivered.

Dugas, on the other hand, testified that he wanted only $20,000 which he needed to make a "deal" in Cairo, Illinois; that he expected to make a quick profit from the Cairo transaction, and that Bernard Brothers was to receive a "cut" out of the profit; that, when he met one of the brothers in Memphis, he informed him that the Cairo "deal had fallen through", and that "those gangsters took me for this money". He stated that when he returned to New Iberia he told Raleigh Bernard he would repay the $20,000; that Bernard refused to accept this amount and insisted that he still wanted $31,200 in spite of the fact that the "deal" had fallen through. Dugas further testified that that portion of the note above $20,000 represented the brothers' $5,000 "cut" if the Cairo "deal" was successful; $5,500 he was to pay them for the Cadillac, and $700 in clothing which he had also agreed to give them if the Cairo "deal" went well.

It is obvious that the testimony of the parties is in hopeless conflict. In our view no logical reason is given in the Bernards' testimony to explain why $6,300 was handed to Dugas in private, whereas the remaining $20,000 was counted over to him in the presence of the lawyer. We cannot see why the Bernards should have wanted a witness to the payment of $20,000, yet at the same time were willing to give Dugas $6,300 in the privacy of their office.

■ The testimony in this case when considered as a whole makes it appear very doubtful that more than $20,000 was ever delivered to Dugas by the Bernards. Therefore, the presumption that this $31,200 note was given for full value no longer exists, and the burden has shifted to the Bernard brothers to prove by a preponderance of the evidence that full value was indeed paid by them for the negotiable paper. This they have not done to our satisfaction, and therefore they cannot recover more than $20,000 on this instrument. See Moss v. Robinson, supra.

■ As we said above, Dugas admitted in his petition for injunction that he owed $20,000 on the note, and alleged tender of this amount to the Bernards. In this court counsel for Dugas tell us that the Bernards are not entitled to 10 per cent attorney's fees for the cost of collecting the note, as the action was unnecessary. This contention has no substance because there is no proof in the record in this case that Dugas timely made a legal or bona fide tender of $20,000 to the Bernards.

■ As this suit was tried on Dugas' application for a preliminary injunction, the personal judgment rendered by the lower court was not responsive to the pleadings, and will have to be set aside. Masset v. Beckler, 224 La. 1067, 71 So.2d 570.

The personal judgment appealed from is set aside. The case is remanded to the district court, and that court is directed to issue a writ of preliminary injunction preventing the collection in the executory

proceedings of more than $20,000 with interest at 6 per cent per annum from July 14, 1952, 10 per cent thereon for attorney's fees, and all costs of the executory proceedings. Bernard Brothers is to pay all costs of the injunction proceedings.

SIMON, J., recused.