HAMITER, Justice.
 

 Dr. Donald L. Cooper instituted this suit to obtain a money judgment totaling $116,-000 against the succession of his deceased brother, James L. Cooper. For a cause of action he alleged in the original petition that the decedent borrowed from him at various times sums of money which totaled $108,000 and, in consideration therefor, gave a promissory note in such amount— dated August 29, 1955 and payable on demand — which is due and unpaid. Plaintiff further alleged that decedent also gave to him a check dated February 15, 1954 for $8,000, it evidencing another loan and having never been cashed.
 

 In a supplemental petition, with respect to the consideration for the note and check sued upon, plaintiff additionally alleged: “That loans were made to the decedent herein in cash and that the said loans on the following dates:
 

 July 19, 1937 $ 35,000.00
 

 June 2, 1949 18,000.00
 

 June 30, 1949 30.000.00
 

 June 2, 1952 25.000.00
 

 February 8, 1954 8,000.00
 

 Total $ 116,000.00”
 

 Defendant (the Succession of James L. Cooper) was cited through and represented by its duly qualified administratrix, Mrs. Mildred Claire Schmidt, a divorced wife of the decedent and the natural tutrix of three of his four minor children and sole legal heirs. In her answer she pleaded, in the alternative, several defenses. However, all were later abandoned except that of want or lack of consideration for the note and check on which the action is based.
 

 Following a lengthy trial the suit was dismissed in its entirety.
 

 On this appeal plaintiff complains of the judgment only as it concerns the note, his claim respecting the check having been abandoned. To quote from the brief of his counsel: “ * * * the check claim was dismissed by the plaintiff and that left only the question of the note itself.”
 

 With reference to the proof to be made in a case of this nature the law is fully set forth in Moss v. Robinson, 216 La. 295, 43 So.2d 613, 617. Therein we said: “The jurisprudence of this state * * * appears to support the view that when a plaintiff introduces in evidence the negotiable instrument sued on (legally presumed to have been given for value received) he is not required in the first instance to produce any further proof of consideration, notwithstanding that the defendant has specifically pleaded a want
 
 *835
 
 thereof. The defendant, thereupon, has the burden of going forward with the evidence and rebutting the prima facie case (in favor of plaintiff) thus made out. (Here numerous authorities are cited). But if the defendant offers evidence which overcomes the prima facie case, that is, casts doubt upon the reality of the consideration, the ultimate burden of proving consideration, by evidence that preponderates, is on the plaintiff. (Here numerous authorities are cited)”
 

 These principles were approved in Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257.
 

 In the instant case the administratrix, to overcome the prima facie case made out by the introduction of the note in evidence, first produced certain correspondence that passed between plaintiff and the decedent from November 14, 1949 to March 30, 1950. In his letters the former made insistent demands on the latter for payment of the relatively small sum of $4,200 (admittedly borrowed a short time previously by the decedent and paid in full on March 30, 1950), he repeatedly asserting a dire need for the money; yet no mention was made therein of the large amounts which he now says were due him at that time (loans of: $35,000 on July 19, 1937, $18,000 on June 2, 1949 and $30,000 on June 30, 1949 — a total of $83,000). In explanation of these insistent demands plaintiff testified that he did not then really need the $4,200; but that the decedent had failed to give an I.O.U. for such loan, as was done-with each of the other loans, and that he hoped to obtain by his efforts either an instrument of that kind or payment. However, we notice that in none of his letters did plaintiff ask for an I.O.U. Further, it appears that in a written reply by the decedent he acknowledged owing the debt; nevertheless, even after the acknowledgment, plaintiff continued to demand payment.
 

 Another letter written by the decedent, according to the record, was dated December 5, 1949 and addressed to one of plaintiff’s present attorneys. Among other things it stated: “My brother,.Dr. Donald Cooper, Jackson, Mississippi, loaned to me $4,200, for which I signed a note. * * * Our records here in the office show an indebtedness to Donald for $4,200 * * *.”
 

 Again, the administratrix produced a list of the debts of the community of acquets and gains that once existed between her and the decedent, it having been submitted by decedent’s attorney to her attorney with the view of effecting a settlement of the community in connection with the dissolution of their marriage in 1950. This list, dated August 22, 1949, showed an indebtedness to plaintiff of only $4,200; it made no reference whatever to any of the
 
 *837
 
 alleged loans which plaintiff contends constituted the consideration for the note here sued upon.
 

 Also, the administratrix furnished the testimony of two disinterested witnesses to the effect that, at the time of and several months prior to the death of James L. Cooper (January 1, 1956), they had seen a written receipt (it has since disappeared) which recited payment of some $80,000 by decedent to plaintiff. The purpose of this evidence was not to prove payment of the note. It was offered to show that decedent had obtained an instrument in the nature of a counter letter to protect himself from acknowledgments of fictitious obligations to plaintiff which were made for the accommodation and convenience of both parties.
 

 By showing the circumstances above outlined, as well as others disclosed by the record, the administratrix unquestionably created a serious doubt as to the reality of the consideration for the note and overcame the prima facie case that initially existed in plaintiff’s favor. And that being true the burden of proving the note’s true consideration or value, by evidence that preponderates, devolved upon plaintiff.
 

 For discharging this burden plaintiff relied principally on the testimony of himself, of his wife, of Mrs. Dolores Cohen and her husband, Dan Cohen, and on the books of decedent’s business.
 

 Plaintiff, who was not licensed to practice medicine until 1946, testified during the trial that all of the large loans for which the note was given were made in cash from funds he had earned; and that as each loan was consummated the decedent gave him an I.O.U. therefor which was kept until the execution of the note. The greater part of these funds, he said, were earned while he was employed in Chicago, Illinois, by a group of doctors, and that the money had been kept for years in a friend’s bank box in that city — later in other bank boxes in the State of Mississippi. He explained that beginning in 1925, when he was seventeen years of age, and continuing until about 1931, he was engaged principally in bottling bootleg whiskey (furnished by A1 Capone) for the purpose of filling prescriptions issued by the Chicago doctors for whom he worked, he receiving each month for his services a salary of $180 and a commission of approximately $1,200 on the whiskey sales, most of which he saved.
 

 But it is interesting to note that in sworn testimony given by plaintiff to federalagents in December, 1954, in connection with an investigation of an income tax liability of decedent, James L. Cooper, plaintiff stated that he had no record at all of any loans made to his brother or any written evidence of the debts. Further, he said that the funds lent were from a pool to which various members of his family had contributed.
 

 
 *839
 
 We also notice from the record that plaintiff had no employment from 1931 to 1933, at which time he moved to New Orleans where for about two years he assisted physicians at Touro Infirmary for small compensation. During 1935 and 1936 he was employed by United Theatres, Inc. at neighborhood theaters in that city, first as a doorman and later as a manager. In the latter capacity he received a salary of $27.50 per week. As to his activities at all times from 1936 until 1946, when he was licensed to practice medicine, the record is not clear. However, it does show that he was a soap salesman .in the State of Texas for a while and also that he spent approximately two years at a medical college in Kansas City, Missouri.
 

 Plaintiff’s wife testified that decedent gave the note to plaintiff in her presence in exchange for the I.O.U.s issued in connection with the several loans. But she had never seen decedent receive any of the money allegedly lent to him.
 

 The testimony of Dan and Mrs. Dolores Cohen (the latter was employed by James L. Cooper for many years) was to the effect that decedent told them that he was indebted to plaintiff for substantial sums of money. Of course, this is the weakest kind of evidence known to our law.
 

 Much reliance is placed by plaintiff on the books of decedent’s business which disclose a large indebtedness to him. However, it is conceded that the entries were not made when the money was allegedly lent, and decedent’s bank records do not show a deposit of a large amount at any one of the appropriate dates. Rather, decedent’s auditor stated that the entries were made belatedly at his direction- — after it was discovered that the business had spent more money than was earned according to the income records. And they were based on information furnished by plaintiff when, at the suggestion of decedent, the auditor called him by telephone for it. Incidentally, plaintiff gave sworn testimony to the above mentioned federal agents that he had no record of the loans, did not know the exact amounts thereof, and had depended on decedent to record the necessary information.
 

 The case presents primarily questions of fact. The trial judge, in resolving the conflict in favor of the defendant (he assigned no written reasons therefor), obviously did not give much credence to the evidence introduced by plaintiff. In view of the many glaring inconsistencies and contradictions attending that evidence we are unable to say that the judge manifestly erred in dismissing the suit.
 

 For the reasons assigned the judgment appealed from is affirmed.