HOOD, Judge.
Plaintiff, Guidry Laborde, instituted this suit against Dewey Dauzat, administrator of the Succession of Abelus N. Dauzat, deceased, for the sum of $2,000.00, with interest and attorney’s fees, being the amount alleged to be due on a promissory note exe *639 cuted by said decedent. He further prays for recognition of a lien and mortgage which purports to secure the payment of said note and which affects a tract of land owned by the estate of the decedent. Defendant Dauzat filed an answer and a re-conventional demand, in which he impleads Mr. and Mrs. I. B. Laborde as parties defendant, and prays for judgment decreeing that the note and mortgage sued on are simulated contracts and thus are null and void.
After trial on the merits, judgment was rendered by the trial court in favor of plaintiff and against defendant, as administrator of said estate, for the sum of $300.00, with interest and attorney’s fees, recognizing the lien and mortgage claimed by plaintiff, and condemning said defendant to pay all costs. Plaintiff has appealed. Defendant Dauzat has answered the appeal praying that the judgment be modified by eliminating the recognition of the lien and mortgage and by relieving defendant of liability for costs.
The note upon which this suit is based is for the principal sum of $2,000.00. It was executed by the decedent, Abelus N. Dau-zat, in favor of “Mr. and Mrs. I. B. La-borde,” on January 21, 1953, and it is due and payable on January 21, 1958. The note is secured by and is paraphed for identification with an Act of Mortgage bearing the same date, which mortgage was executed by the decedent in favor of Mr. and Mrs. I. B. Laborde and affects a tract of land in Avoyelles Parish. In that instrument the mortgagor, Abelus N. Dauzat, declares that the indebtedness which it secures is “for services and advances to him during the past ten years.”
The maker of the note, Abelus N. Dau-zat, died on March 26, 1953, and Dewey Dauzat was appointed administrator of his succession on May 22, 1953. Guidry La-borde, the plaintiff in this suit, purchased the above-described promissory note from the payees, Mr. and Mrs. I. B. Laborde, on July 11, 1953, for the sum of $1,500.00, and the payees thereupon endorsed the note in blank.
On September 15, 1955, the administrator of the succession filed suit against Mr. and Mrs. I. B. Laborde and Guidry Laborde seeking to have the note and mortgage decreed to be null and void. That suit was tried, but no decision was ever rendered in it. This suit was instituted by Guidry La-borde on October 23, 1961, and thereafter, pursuant to rulings of the trial court and stipulations of counsel, the first suit was dismissed and all of the pleadings and evidence in that case were incorporated into and made a part of the record of the instant suit.
The first issue presented is whether plaintiff, Guidry Laborde, is a holder in due course of the note. Plaintiff contends that he is and accordingly it is argued that the defenses urged are not available to defendant. Defendant Dauzat, on the other hand, takes the position that plaintiff is not a holder in due course.
The evidence shows that the decedent, at his death, was survived by seven children, all of whom were of age of majority. Mrs. Guidry Laborde, plaintiff’s wife, and Mrs. I. B. Laborde, one of the payees on the note, are sisters, they being two of the surviving children left by the decedent. Their husbands, Guidry Laborde and I. B. La-borde, are brothers. Although an intense animosity has existed between some members of this family, both before and after the death of Abelus N. Dauzat, the record shows that the Guidry Laborde family and the I. B. Laborde family have always been friendly.
On December 17, 1952, the decedent executed a cash sale conveying to Guidry La-borde a five-acre tract of land, being a part of his farm, for a consideration of $125.00. Mr. and Mrs. I. B. Laborde signed that deed as witnesses. On the following day, December 18, 1952, the decedent executed a promissory note in favor of Mr. and Mrs. I. B. Laborde, which note was for the sum of $2,000.00, due in five years and secured *640 by an Act of Mortgage affecting the remainder of the decedent’s farm property. Both the sale and the mortgage were prepared by the same notary and were filed for record at the same time on December 18, 1952. A few weeks thereafter, on January 21, 1953, the $2,000.00 note which had been executed by the decedent was marked “Paid,” and the mortgage securing that note was cancelled from the Mortgage Records of Avoyelles Parish. On the same day, January 21, 1953, the decedent executed another note and mortgage for the same amount, made payable to the same payees, and affecting the same property, these documents being the note and mortgage on which this suit is based. This last mortgage, however, was not placed of record until March 27, 1953, which was the day after Abelus N. Dauzat died.
The Negotiable Instruments Law of this State provides that one of the requirements which must be met in order for a person to be a holder in due course of a promissory note is “That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.” LSA-R.S. 7:52. The law also provides that “To constitute notice of an infirmity in the instrument or defect in the title of the person negotiating the same, the person to whom it is negotiated must have had actual knowledge of the infirmity or defect, or knowledge of such facts that his action in taking the instrument amounted to bad faith.” LSA-R.S. 7:56.
The trial judge, in holding that plaintiff was not a holder in due course of the note, said:
“ * * * Under all of the surrounding facts which have been hereinbefore detailed it is a tax upon credulity to accept that plaintiff was not fully aware ■of the execution of the first note and mortgage and their subsequent extinction, or that he did not know fully of the status of affairs between decedent .•and Mr. and Mrs. I. B. Laborde, especially in view of his admission that he and his wife were friendly with the family. In the words of LSA-R.S. 7 :- 56, he must have had ‘knowledge of such facts that his action in taking the instrument amounted to bad faith.’
“However, it is not at all necessary that we rest on circumstantial evidence because the mortgage held by plaintiff states that Mr. Dauzat was indebted to Mr. and Mrs. Laborde in the sum of $2,000 (represented by the note) for ‘services and advances to him during the past ten years.’ Thus, on the face of the instrument itself, plaintiff was informed of the nature of the stated indebtedness and the possible, if not probable, infirmities inherent in it. To conclude otherwise would be simply blinding ourselves to reality, and the resolution that plaintiff is not a holder in due course is inevitable.”
We cannot say that the trial judge erred in reaching that conclusion. Accordingly, we find, as he did, that plaintiff is not a holder in due course of the note upon which this suit is based.
Defendant resists payment of the alleged indebtedness primarily on the ground that the note and mortgage on which the suit is based are fraudulent conveyances or simulations, and thus they are null and void. He contends that Mrs. and Mrs. I. B. La-borde “designed a fraudulent plan” to deprive the other children of decedent of their legitime, and that in furtherance of that fraudulent design Mr. and Mrs. I. B. Laborde deprived all of the other children, except one, of access to their father for several months immediately preceding his death. Defendant contends further that as a part of this fraudulent scheme Mr. and Mrs. I. B. Laborde procured decedent’s signature to a note and mortgage in their favor on December 18, 1952, and that although other children of the decedent succeeded in getting that note and mortgage cancelled on January 21, 1953, nevertheless Mr. and Mrs. I. B. Laborde on the same *641 day fraudulently procured the signature of the decedent on another note and mortgage almost identical to the one which was can-celled (being the documents on which this suit is based) and they concealed that fact from their brothers and sisters until after the death of the decedent. Although defendant does not specifically allege a failure of consideration, he infers in its pleadings that the decedent received no consideration for the note and mortgage. We think the question of whether adequate consideration was given is one of the important issues to be considered because failure of consideration is one of the elements of proof required to establish that this transaction is simulated.
The law provides that forced heirs have the right to annul absolutely and by parol evidence the simulated contracts of those from whom they inherit. LSA-C.C. Article 2239. In an action attacking an authentic act as being a simulation, the burden of proof rests primarily upon the party making the attack to establish the facts upon which the alleged invalidity is based. If one alleging a simulation, however, produces evidence of circumstances which creates highly reasonable doubts or suspicions as to the honesty of the transaction, a prima facie case is considered as having been made out and the burden of proof is shifted to the party relying on the validity of that transaction to show that it was valid. Burch v. Nichols, La.App. 3 Cir., 126 So.2d 713; Broussard v. Broussard, La.App. 3 Cir., 132 So.2d 85; Landry v. Landry, La.App. 3 Cir., 140 So.2d 706 (Cert. denied); Luquette v. Floyd, La.App. 3 Cir., 147 So.2d 894 (Cert. denied).
Rules of evidence somewhat similar to those above set out apply in cases where payment of a promissory note is resisted on the grounds of failure of consideration.
Under the laws of this State every negotiable instrument is deemed prima facie to have been issued for a valuable consideration. LSA-R.S. 7 24. A plaintiff suing on a negotiable instrument, therefore, is not required to produce any proof of consideration when he introduces the instrument into evidence, and this remains true in spite of the fact that the defendant in his answer may have alleged lack of consideration. In such a case the burden rests on the defendant of going forward with the evidence and rebutting the prima facie case in favor of plaintiff. If during the trial of the case, however, the defendant offers evidence which casts doubt upon the reality or the amount of the consideration, the presumption that the note was given for value is rebutted and the burden shifts to the plaintiff to prove consideration by a preponderance of the evidence. Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257; Eskew v. Walker, La.App. 3 Cir., 127 So.2d 210; and Home Finance Service of Lafayette Parish v. Black, La.App. 3 Cir., 131 So.2d 547.
The facts are that the decedent, who was 70 years of age at the time of his death, had been in ill health for a number of years prior to his demise, being a chronic asthmatic. He was paralyzed in his left side during the last five years of his life, and he was practically a complete invalid during the last two or three years of it.
About ten years before his death, the decedent moved into the home of Mr. and Mrs. I. B. Laborde, Mrs. Laborde being his daughter, and he lived in that home for about five years. While he was living there Mrs. Laborde cared for him by keeping house, washing his clothes, preparing most of his meals and nursing him when he was ill. Approximately five years prior to his death, the decedent constructed a one-room house on his own property and moved into it. He found, however, that he was unable to care for himself, probably because he became partially paralyzed about that time, so shortly after building the house he had it moved from his own property to a location next door to the I. B. Laborde residence, on land owned by I. B. Laborde. He thereafter continued to reside in that one-room house until the *642 date of his death. During that five-year period, while the decedent was living in a separate one-room house next to the I. B. Laborde residence, Mrs. I. B. Laborde continued to care for him. She testified, and we think the evidence establishes, that during that time she bathed him regularly, changed his bedding and bedclothes, prepared his meals for him, assisted him in getting his breath during asthmatic attacks, assisted him in using a bedpan, since he was unable to care for himself during most of that time, and she provided the other care and nursing services which he needed, some of which services were of a very demanding and unpleasant nature. During the last year of his life the decedent was hospitalized two or three times, and on those occasions Mrs. I. B. Laborde stayed in the hospital with him.
Shortly after the one-room house was moved next door to the Laborde residence, an alarm bell was installed in Mrs. La-borde’s bedroom so that the decedent could call her at any time of the day or night as he needed her, and Mrs. Laborde testified that she was frequently summoned by him at night and during the early morning hours. All of the utilities in decedent’s one-room house were connected to the meters on the I. B. Laborde home, and the charges for these utilities were paid by Mr. and Mrs. I. B. Laborde. The decedent had very little income during the last years of his life, his principal income being an old age pension of $50.00 per month, although he also received some lesser amounts as farm and oil lease rentals on his 28-acre farm. The record shows that he paid some of his own living expenses himself, but it is obvious that he was unable to pay for all of them. For that reason, Mr. and Mrs. I. B. Laborde provided him with some food and his utilities, and they frequently paid for his transportation to and from the doctor. There is no indication in the record as to how much the Labordes paid for these items and services.
Mr. and Mrs. I. B. Laborde testified that they made substantial cash loans to the decedent from time to time during the last five years of his life. Defendant, on the other hand, produced evidence tending to show that the decedent kept substantial sums of money on his person, indicating that it was not necessary for him to obtain advances from anyone. The trial judge, apparently assuming that the burden of proof rested on plaintiff, held that there was not sufficient proof to establish that the Labordes loaned or advanced any significant amount of money to the decedent. We agree that the evidence tending to show that the Labordes made loans of money to the decedent is inconclusive, but for the reasons which will be discussed later we think the trial judge erred in placing on plaintiff the burden of proving that an adequate consideration had been paid for the note.
Although defendant contends that he and other children of the decedent were responsible for getting the original note and mortgage, dated December 18, 1952, can-celled from the records, we think the evidence shows conclusively that that original mortgage was cancelled by the decedent on January 21, 1953, because he had been informed that his welfare payments would be discontinued if the mortgage remained on the records. The decedent himself, therefore, arranged to have the mortgage cancelled in order to insure his continued receipt of welfare benefits. In lieu of the cancelled mortgage, he executed another note and mortgage almost identical to the ones which he had previously executed, and this last mortgage was not recorded immediately because of the danger that his welfare payments might be discontinued. We find nothing in the evidence to substantiate defendant’s position that some of the decedent’s children forced him to cancel that mortgage, or that there existed a fraudulent scheme to conceal from the other heirs the fact that a new mortgage had been executed.
The testimony of the notary and witnesses before whom both of these mortgages were executed shows clearly that the *643 decedent was of sound mind on those occasions, that he executed both of these documents voluntarily and that the purpose of executing them was to repay Mr. and Mrs. Laborde for the advances they had made to him and for the services they had rendered for him during the preceding ten-year period.
Mrs. I. B. Laborde testified that she did not “charge” her father anything for providing these services, but when pressed on cross-examination to place a value on them, she estimated the value of her services to be $100.00 per year. The trial judge, in his written reasons for judgment, said: “Certainly no one can quarrel with this estimate, regardless of how it may be arrived at, and, indeed, it would seem that any fair-minded person would agree that one in the situation of decedent would regard the value of these services as considerably in excess of such an amount. Nevertheless, one hundred dollars per year is the figure determined by Mrs. Laborde herself, and it is not for the Court to disregard it.” The trial judge then determined that the decedent’s period of “disability” covered no more than three years prior to his death, and accordingly he concluded that the total value of the services rendered by Mrs. I. B. Laborde was $300.00.
We agree with the trial court that the services rendered by Mrs. I. B. Laborde to her father were worth considerably more than she estimated their value to be. We think the trial court erred, however, in holding that these services were rendered only over a period of three years. The evidence clearly shows that she cared for her father for ten years immediately prior to his death. And, in the Act of Mortgage executed by decedent two months before he died, he specifically stated that the $2,-000.00 note was given “for services and advances to him during the past ten years.” In determining the value of the services which she rendered, therefore, we think the care and attention which she gave her father during the entire ten-year period should be considered. If we accept her own modest estimate as to the value of such services, it is apparent that they were worth at least $1,000.00.
Since the defendant here is demanding that the note and mortgage be annulled as a fraudulent conveyance or simulation, the burden rests on defendant Dau-zat to produce evidence of circumstances sufficient to at least create highly reasonable doubts or suspicions as to the honesty of the transaction. Defendant, through his able counsel, argues that the following established facts are sufficient to create such doubts or suspicions: (1) the decedent was 70 years of age and in ill health at the time the note and mortgage were executed, he did not expect to live five more years, and yet he executed a promissory note which was due and payable five years after date; (2) the mortgage executed by the decedent was withheld from record for an unusual length of time; and (3) the decedent by executing the note and mortgage obligated himself to pay a large sum of money, and he mortgaged all of his property to secure that payment, although it was obvious that because of his advanced age and meager income he would not be able to repay it.
In our opinion, the evidence as to these circumstances is not sufficient to create highly reasonable doubts or suspicions as to the honesty of the transaction. On at least two separate occasions (December 18, 1952, and January 21, 1953) the decedent specifically acknowledged his indebtedness to Mr. and Mrs. I. B. La-borde, expressed a desire to pay that debt and then executed a promissory note and mortgage in their favor for the express purpose of compensating them for the advances made and services rendered to him during the past ten years. The evidence is uncontradicted, and defendant admits in his testimony, that substantial services were rendered by the payees on the note over a ten-year period, some of *644 which services included the providing of a home for the decedent during a part of that time. Although it may be reasonable to assume that the maker of the note did not expect to live five more years and that he knew that his income was such that he would not be able to pay this indebtedness, we find nothing suspicious or dishonest about his executing a note and mortgage to evidence this indebtedness rather than using a deed, a donation inter vivos or a will. We have already pointed out that the recording of the mortgage was delayed in order to avoid the possible discontinuance of welfare payments to the decedent, and not because of any fraudulent scheme to conceal from the other heirs the fact that such a document existed. For these reasons, we conclude that the evidence produced by defendant is not sufficient to shift the burden of proof to plaintiff to prove the validity of the transaction.
Since it is presumed that the note and mortgage are valid and that the note was issued for a valuable consideration, and the evidence produced is not sufficient to rebut that presumption, the conclusion must be reached that the decedent received adequate consideration for the note and mortgage and that the transaction was not void as being a fraudulent conveyance or simulation.
Defendant argues, finally, that the services rendered by Mrs. I. B. Laborde for her father were the fulfillment of merely a “moral” and not a “natural” obligation, and that accordingly the rendering of such services does not constitute a valid consideration for the note given by decedent. We cannot agree with that argument. The law was stated concisely by our Supreme Court in Farrar v. Johnson, 172 La. 30, 133 So. 352, as follows:
“ * * * There is always a presumption, when such services are rendered by a son or daughter to the parent, that the services are gratuitous;, and the law will not allow compensation in such cases without proof of a promise or expressed intention on the part of the parent to pay for the services. * * *” (Emphasis added).
In the instant suit the note and mortgage executed by the decedent constitute almost unassailable proof of a promise or expressed intention on the part of the parent to pay for the services of his daughter. See also Muse v. Muse, 215 La. 238, 40 So. 2d 21; and Story v. Story, La.App. 1 Cir., 131 So.2d 913.
In our opinion the evidence fails to establish that the note and mortgage executed by the decedent in favor of Mr. and Mrs. I. B. Laborde were simulations, or that they were given for an inadequate consideration. Accordingly, we find that plaintiff is entitled to recover the full amount due on that note, and that the judgment of the trial court should be amended by increasing the award to that amount.
For the reasons herein set out, the judgment appealed from is amended by increasing the principal amount awarded in said judgment from the sum of $300.00 to tire sum of $2,000.00. In all other respects the judgment of the trial court is affirmed. All costs of this appeal are assessed to defendant-appellee.
Amended and affirmed.