294 So.2d 246 (1974)
John P. BRASHEARS, Jr.
v.
Fred WILLIAMS et al.
No. 9781.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
Rehearing Denied May 28, 1974.
Joseph A. Gladney, Baton Rouge, for appellant.
John B. Williams, Baton Rouge, for Creech.
Arthur J. Boudreaux, III, Baton Rouge, for defendant, Giammerse.
*247 Before LOTTINGER, BLANCHE and de la HOUSSAYE, J J.
BLANCHE, Judge.
This is a suit on a promissory note instituted by plaintiff, John P. Brashears, Jr., holder and payee of a note dated December 31, 1966, in the original principal sum of $25,000 payable seventy-five days after date with interest at the rate of eight percent per annum from maturity until paid and co-signed by defendants, Fred Williams and Sam Giammerse.
Plaintiff's original petition was directed to Williams only and alleged that of the original principal sum of $25,000 Williams was still indebted to plaintiff in the sum of $22,940.64 with interest at the rate of eight percent per anum from June 1, 1969, plus ten percent of the principal and interest as attorney's fees plus all costs. Defendant Williams filed an answer denying that he was indebted to plaintiff for the above sum, though he did admit that he signed a blank note and delivered it to Giammerse. He further alleged that neither Giammerse nor anyone else was ever authorized by him to fill in the note for the sum of $25,000. Williams also alleged that he never owed any sum to plaintiff and that as a result there was a failure of consideration to support the note.
Defendant Williams alternatively assumed the role of third party plaintiff against Giammerse, made third party defendant herein. Williams urged that if he were found to be indebted to plaintiff then he was entitled to have the court render judgment in his favor and against the third party defendant Giammerse for any amount for which the court found defendant Williams to be indebted to plaintiff Brashears. Giammerse filed an answer to the third party demand urging the affirmative defense of discharge in bankruptcy.
Plaintiff Brashears subsequently filed a supplemental and amending petition alleging that Giammerse was indebted in solido with Williams on the same note. Defendant Williams filed a general denial to plaintiff's supplemental and amending petition.
The third party defendant Giammerse did not file an answer prior to trial. However, the trial court, ex proprio motu, granted counsel for third party defendant an opportunity to file an answer within three days after the trial date.
In holding Giammerse and Williams liable in solido to Brashears for the amount sued upon, the trial judge found that the note was filled in when it was signed by Giammerse and Williams; that there had been prior loans from Brashears to Williams, some of which had remained unpaid; that $8,000 had been transferred from Brashears to Williams; and that this $8,000, together with prior unpaid loans, formed sufficient consideration for the $25,000 note. Giammerse's affirmative defense of bankruptcy was disallowed because this particular note was not scheduled, and the third party demand of Williams against Giammerse was dismissed. The defendant and third party plaintiff, Fred Williams, has appealed from this judgment. We affirm.
A reading of the transcript elicits a pattern of loan transactions involving all three parties to this suit. Apparently, Williams had been borrowing money from Giammerse prior to his acquaintance with Brashears. Williams operated several movie houses in Baton Rouge, and his need for operating capital to bankroll periodic rental of films must have created a need for a bigger lender than Giammerse. Giammerse introduced Williams to Brashears, and Brashears began making periodic loans (apparently several loans a month) in amounts of $800 to $1,500 each. None of the parties involved seem to be able to remember exactly how long this activity took place, although it appears as though it occurred over at least a year's period of time.
*248 Whenever Williams needed money, Brashears would bring the agreed upon amount to Giammerse's store where it would be picked up by Williams. In return, Brashears apparently received a receipt and a check or note made payable to him for the amount lent plus interest charged. Whenever Williams would pay Brashears, the corresponding check or note would be returned to Williams.
According to Brashears, Williams failed to make some of his payments but continued to request additional loans. Brashears contends that he refused any further loans unless Williams would give him a note co-signed by Giammerse covering all accounts past due plus the loan Williams was then requesting.
A check from Williams to Brashears in the amount of $25,000 was introduced into evidence. Brashears alleges that this check was originally given as security for the $25,000 loan but that he would not accept this check from Williams. He further states that he required a promissory note co-signed by Giammerse before he would forward any further money. It is Brashears' testimony once again that this check represented security for a $25,000 consolidation loan which was unacceptable to him.
It is Williams' contention that the $25,000 check was written in anticipation of receiving a loan in this amount but that a loan to him in that amount never materialized since he only received $8,000 cash from Brashears for which he agreed to repay the sum of $10,000. All of the parties admit that the sum of $8,000 cash was personally delivered by Brashears to Giammerse's store where it was received by Williams. It is also apparent from the testimony that Giammerse received no benefit from this loan whatsoever.
Williams acknowledges that he did sign the note in question, but alleges that the note was blank and that he authorized no one to fill it in for the amount of $25,000. Brashears, on the other hand, insists that the note was filled in for the sum of $25,000 before it was signed. Giammerse, who was being sued by both parties, could not remember whether the note was signed in blank or not.
Brashears' testimony constantly alludes to antecedent debts but he could not offer any documentary proof therefor except the note and check for $25,000, inasmuch as previous notes and checks arising out of prior loans were released to Williams when he received the $25,000 note. Williams is basically in agreement as to the existence of prior transactions with Brashears but states that these debts were paid or being paid by a separate accounting.
Whether the note was signed by Williams and Giammerse in blank and later filled in by Brashears for $25,000 instead of $10,000 is a factual determination ultimately relating to whether there was consideration for the note sued upon. The factual determination of the issue as to whether the note was filled in by Brashears after having been signed in blank was properly disposed of by the trial judge as follows:
"Williams contends that while he signed the instrument, it was not filled out at the time. The Court is dubious regarding the truth of this assertion; however, LSA-R.S. 7:14 provides, inter alia: `.... And a signature on a blank paper delivered by the person making the signature in order that the paper may be converted into a negotiable instrument operates as a prima facie authority to fill up as such for any amount.' Any mistake in filling out an improper amount will be normally attributable to the maker in the absence of clear testimony to the contrary. * * *" (Written Reasons for Judgment, Record, p. 28)
The trial judge then observed:
"The decision of whether the note was issued for a proper consideration must ultimately rest on the credibility of the parties. It is true as Williams alleges *249 that only $8,000.00 passed hands when the note was given to Brashears. The evidence, however, shows that despite Williams' original denial, there had been a history of advances from Brashears to Williams. While it was not to his advantage, Giammerse acknowledged this fact. Further, the issuance of the $25,000.00 check, albeit, that it was made payable to `Sam's Grocery', supports Breashears' side of the story rather than that of Williams. Considering that there were some glaring contradictions to be found in the testimony of Williams, together with other corroborative evidence, the Court believes that the note for $25,000.00 was executed by Williams to cover not only the new loan of $8,000.00, but to consolidate and pay other previous advances. In any event, the Court finds that there was adequate consideration given for the note sued upon." (Written Reasons for Judgment, Record, pp. 29, 30)
By his own admission Williams signed the note in blank. Giammerse, the accommodation maker, could not remember. Our review of the record shows there is no other testimony to convince us that Williams signed the note in blank except for his own. The trial judge did not take Williams' word for it, and we believe if Williams thought the note should have been filled in for $10,000 instead of $25,000, it was incumbent upon him to come forward with more convincing evidence than his own testimony to overcome the prima facie authority to fill up the note with the sum of $25,000. After all, the practice of signing a promissory note in blank is a practice calculated to result in misunderstanding. Maloney v. Central Finance Company, Inc., et al., 18 La.App. 108, 137 So. 353 (Orl. Cir.1931).
We find no manifest error concerning either of the above findings by the trial judge. While the manner in which Brashears transacted business could be described as loose, to say the least, it gives some credence to the reason he could not submit documentary proof of Williams' past indebtednesses, except by reference to the $25,000 note and check which he had in his possession. Brashears, in most instances, would give the money to Williams, and Williams, in return, would give Brashears a check or note but usually a check. When Williams paid off a note, he would pay through Giammerse, and when the note was paid, Brashears would then return the check or note which represented the indebtedness.
The amount of the note does not seem unrealistic when it is considered that the parties had conducted business with each other for over a year with Williams borrowing from Brashears as much as $800 to $1,500 on each occasion and when Williams' poor financial condition is taken into account.
With regard to Giammerse's testimony, we note that he observed Brashears giving Williams an envelope which Brashears states contained evidence of the previous indebtednesses. Although Giammerse did not know what was in the envelope, it does corroborate Brashears' testimony that when he got the $25,000 note he returned the evidence of Brashears' previous indebtednesses in an envelope. It further corroborates the testimony above concerning the manner in which they had previously conducted their business.
We have no quarrel with the proposition that in a suit on a promissory note by a payee against the maker, the plaintiff therein will be given the presumption that the instrument was given for value received unless the maker casts doubt upon the consideration and that once the maker has cast doubt upon the issue of consideration, then the burden shifts to the payee to prove consideration by a preponderance of the evidence. Moss v. Robinson, 216 La. 295, 43 So.2d 613 (1949); Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257 (1956). However, in our view whatever doubt was cast on the consideration *250 for the note as a result of Williams' testimony was overcome by plaintiff, because there was sufficient corroborating evidence in favor of plaintiff to justify the trial judge's conclusion that he had proved consideration for the note by a preponderance of the evidence.
The trial judge was also correct in rejecting Giammerse's affirmative defense of bankruptcy. Even though he received no benefit for co-signing the note in question, he is considered as an accommodation maker and solidarily bound with Williams. LSA-R.S. 7:29; Walker v. Delahoussaye, 116 So.2d 884 (La.App. 1st Cir. 1959); Gaspard v. Lachney, 92 So.2d 277 (La.App. 2nd Cir. 1957). While the affirmative defense of bankruptcy does not constitute payment or extinguishment of a debt, it can serve as a personal defense and bar enforcement of a debt. However, since Giammerse did not schedule the debt in question, his plea in bankruptcy was properly disallowed. 11 U.S.C.A. Sec. 35(a)(3).
For the reasons assigned, the judgment of the trial court is affirmed, at appellant's cost.
Affirmed.
de la HOUSSAYE, Judge.
The true crux of the matter at hand is whether there was sufficient consideration to support plaintiff's demand based on the $25,000.00 note. Our Negotiable Instruments Law and Jurisprudence make it clear that every negotiable instrument is deemed prima facie to have been issued for valuable consideration. La.R.S. 7:24; Cooper v. Succession of Cooper, 234 La. 832, 101 So.2d 686 (1958); Bernard Brothers v. Dugas, 229 La. 181, 85 So.2d 257 (1956); Moss v. Robinson, 216 La. 295, 43 So.2d 613 (1949); Alexander v. Occhipinti, 251 So.2d 188 (La.App., 4th Cir., 1971).
In a suit on a promissory note by a payee against the maker, the plaintiff therein will be given the presumption that the instrument was given for value received unless the maker casts doubt upon the consideration. Andrews v. Williams, La., 281 So.2d 120 (1973); Cooper, et seq., supra. Once the maker has cast doubt upon the issue of consideration then the burden shifts to the payee to prove consideration by preponderance of the evidence. Ibid. I do not believe that the plaintiffpayee in the instant case has carried this burden.
There was introduced into evidence a check from Williams to Brashears in amount of $25,000.00. Brashears alleges that this check was originally given as security for the $25,000.00 loan, but that he would not accept the check from Williams. He further states that he required a promissory note co-signed by Giammerse before he would forward any further money. It is Brashears' testimony once again that this check represented security (which was unacceptable) for a $25,000.00 consolidation loan.
It is Williams' contention that the $25,000.00 check was written in anticipation of a loan in this amount which never materialized. Williams stated that he requested a $25,000.00 loan, but that Brashears refused to lend him this much, granting instead an $8,000.00 loan with the understanding that $10,000.00 would be repaid.
It is obvious that testimony on this point is hopelessly in conflict making it appear from a reading of the transcript that this check really stands alone as corroborating evidence of what may have occurred, but it does not strike me as lending enough credence to Brashears' story to enable him to carry the burden of proof to prove consideration by a preponderance of the evidence.
Williams acknowledges that he did sign the note in question, but alleges that the note was blank and that he authorized no one to fill it in for the amount of $25,000.00. The testimony is not helpful here at *251 all because Brashears says the note was filled in, Giammerse could not remember whether it was signed in blank or not, and Williams testified that he signed the note in blank. Be that as it may, the fact that the face value of the note in question was for the amount of $25,000.00 should not lend weight to Brashears' testimony because this is the very instrument around which this dispute revolves. In the Bernard case, supra, the note in question was for the principal sum of $31,200.00 with interest at the rate of 6% per annum from date and 10% attorney fees. The testimony in that case revealed that $20,000.00 definitely had changed hands, but the payee was unable to prove by preponderance of the evidence that the remaining $11,200.00 had actually been given to the maker of the note in question. Because the testimony in that case was completely contradictory, the Court determined on that basis that plaintiff-payee had not carried the burden as required once the defendant maker cast out upon the question of consideration.
Accordingly, there was a reduction of the amount awarded to that which had not been cast in doubt.
A similar situation exists here. Plaintiff argues that the prior transactions between him and defendant resulted in back debts which formed the basis for consideration over and above the $8,000.00 which actually changed hands. Defendant emphatically denies this, but states that he did receive the $8,000.00 and intended to repay plaintiff in the amount of $10,000.00. Aside from plaintiff's unsupported and uncorroborated testimony, there is not one shred of evidence in the record to indicate how much, if any, pre-existing debts were owed by Williams to Brashears.
The testimony found in the transcript generally alludes to an exchange between Brashears and Williams of an envelope containing papers, but no one could definitely identify the contents of this envelope. Brashears alleges that this envelope contained notes and checks evidencing unpaid debts, while Williams emphatically denies this.
Just because an envelope stuffed with papers was handed from one party to another does not justify a finding of sufficient consideration. The plaintiff-payee at no time proved the contents of that envelope, therefore I feel it should be given only perfunctory attention due to its nebulous nature.
Because the instant case closely parallels that of Bernard, and because my reading of the transcript brings me to the conclusion that plaintiff has failed to sustain his burden of proof with reference to the alleged unpaid and accedent debts, I cannot agree with the majority opinion.
Accordingly, I respectfully dissent.